**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-2229**

SAYED GAD OMARGHARIB,

                    Petitioner,

        v.

ERIC H. HOLDER, JR., Attorney General,

                    Respondent.

-------------------------

CAPITAL AREA IMMIGRANTS' RIGHTS COALITION; IMMIGRANT AND REFUGEE APPELLATE CENTER, LLC,

                    Amici Supporting Petitioner.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued: September 16, 2014          Decided: December 23, 2014

Before NIEMEYER, WYNN, and FLOYD, Circuit Judges.

Petition for review granted; reversed and remanded with instructions by published opinion. Judge Floyd wrote the opinion, in which Judge Niemeyer and Judge Wynn joined. Judge Niemeyer wrote a separate concurring opinion.

**ARGUED**: Steffanie Jones Lewis, INTERNATIONAL BUSINESS LAW FIRM, PC, Washington, D.C., for Petitioner. Aimee J. Carmichael, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for

Respondent. **ON BRIEF**: Stuart F. Delery, Assistant Attorney General, Civil Division, John S. Hogan, Senior Litigation Counsel, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. Heidi Altman, Morgan Macdonald, CAPITAL AREA IMMIGRANTS' RIGHTS COALITION, Washington, D.C.; Ben Winograd, IMMIGRANT & REFUGEE APPELLATE CENTER, LLC, Alexandria, Virginia, for Amici Supporting Petitioner.

———————————

FLOYD, Circuit Judge:

In this appeal, we consider whether Sayed Gad Omargharib's conviction under Virginia's grand larceny statute, Va. Code Ann. § 18.2-95, constitutes an "aggravated felony" under the Immigration and Nationality Act (INA) § 101, 8 U.S.C. § 1101(a)(43). The Board of Immigration Appeals (BIA) answered this question in the affirmative using the so-called modified categorical approach, as clarified by Descamps v. United States, 133 S. Ct. 2276 (2013). Under Descamps, the modified categorical approach applies only if Virginia's definition of "larceny" is "divisible" — that is, if it lists potential offense elements in the alternative, thus creating multiple versions of the crime. The BIA concluded that Virginia larceny is divisible because Virginia state courts have defined it to include either theft or fraud.

Consistent with our prior precedent on this issue, however, we conclude that mere use of the disjunctive "or" in the definition of a crime does not automatically render it divisible. We further hold that, under our recent decisions construing Descamps, the Virginia crime of larceny is indivisible as a matter of law. As such, we agree with Omargharib that the modified categorical approach has no role to play in this case. Instead, the categorical approach applies, and under that approach Omargharib's grand larceny conviction

3

does not constitute an aggravated felony under the INA. We therefore grant Omargharib's petition for review, reverse the BIA's ruling, and remand with instructions to vacate the order of removal.

## I.

Omargharib, an Egyptian native and citizen, entered the United States in 1985 and became a lawful permanent resident in 1990. In 2011, he was convicted in Virginia state court of grand larceny under Va. Code Ann. § 18.2-95 for "tak[ing], steal[ing], and carry[ing] away" two pool cues valued in excess of $200 following a dispute with his opponent in a local pool league. J.A. 452. Omargharib received a suspended sentence of twelve months.[1]

Following his conviction, the Department of Homeland Security sought Omargharib's removal, contending that his conviction constituted an "aggravated felony" under the INA — namely, "a theft offense . . . for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(G); see 8 U.S.C. § 1227(a)(2)(A)(iii) (rendering deportable an alien who is convicted of an aggravated felony).

---

[1] Omargharib later filed a motion to reconsider his sentence (which the trial court denied), but did not appeal his conviction. He also filed habeas motions in both state and federal court, all of which were likewise denied.

4

Before an immigration judge (IJ), Omargharib denied that his conviction made him removable. Omargharib argued that, under the categorical approach set forth in Taylor v. United States, 495 U.S. 575 (1990), the IJ could only compare the elements of larceny under Virginia law with the generic elements of a "theft offense" in the INA and determine whether they match. According to Omargharib, the elements do not match because Virginia law broadly defines larceny to include both theft and fraud, whereas the INA's aggravated felony statute distinguishes between theft and fraud. Compare 8 U.S.C. § 1101(a)(43)(G) (theft) with id. § 1101(a)(43)(M)(i) (fraud).[2]

Under the categorical approach, it is thus possible that Omargharib's grand larceny conviction rested on facts amounting to fraud, not theft. It is undisputed that Omargharib's conviction does not constitute a fraud offense under the INA.[3] And under the categorical approach, the IJ was not free to review the record to determine whether Omargharib's grand larceny conviction was based on theft, not fraud.

---

[2] The INA's theft offense is not tied to any dollar threshold – a theft of even one penny will suffice as long as the term of imprisonment is at least one year. In contrast, the INA's fraud offense only applies if the loss to the victim exceeds $10,000.

[3] The record reflects that the two pool cues were together valued between $525 and $800 – well below the INA's $10,000 fraud threshold. Accordingly, the government does not argue that Omargharib's conviction constitutes a fraud offense under the INA.

5

The IJ agreed that Virginia's definition of larceny is broader than the INA's corresponding "theft offense" crime and thus that the two crimes are not a categorical match.[4] But the IJ proceeded to employ the modified categorical approach, which the IJ held permits consideration of the underlying facts surrounding Omargharib's conviction. Applying that approach, the IJ concluded that Omargharib's larceny conviction rested on facts amounting to theft, not fraud. As such, the IJ held that Omargharib's conviction constituted a theft offense under the INA, making Omargharib removable and ineligible for all forms of discretionary relief.[5]

Omargharib appealed the IJ's decision to the BIA. On September 6, 2013, the BIA dismissed Omargharib's appeal and affirmed the IJ's decision in all respects. Like the IJ, the BIA concluded that the modified categorical approach applied because Virginia law defines larceny in the disjunctive to

---

[4] At the hearing, the IJ first issued an oral decision devoid of any legal analysis. Omargharib appealed the oral decision to the BIA, which remanded back to the IJ to explain his reasoning. The IJ issued a written order on December 26, 2012.

[5] If Omargharib's state law conviction had been classified as a crime under the INA other than an aggravated felony he could have sought certain discretionary relief from removal, such as asylum or cancellation of removal. See Moncrieffe v. Holder, 133 S. Ct. 1678, 1682 (2013) (citing 8 U.S.C. §§ 1158, 1229b). Because the IJ found he committed an aggravated felony, however, he was ineligible for these forms of discretionary relief. See id.

include "wrongful or fraudulent" takings. J.A. 3. Omargharib then timely petitioned this Court for review. We have jurisdiction pursuant to 8 U.S.C. § 1252.

## II.

The central issue before us is whether Omargharib's 2011 grand larceny conviction in Virginia constitutes a "theft offense" as defined by 8 U.S.C. § 1101(a)(43)(G), and thus an aggravated felony under the INA that is grounds for removal.

We review the BIA's determination on this issue de novo. Karimi v. Holder, 715 F.3d 561, 566 (4th Cir. 2013). "Although we generally defer to the BIA's interpretations of the INA, where, as here, the BIA construes statutes [and state law] over which it has no particular expertise, its interpretations are not entitled to deference." Id.; see also Matter of Chairez-Castrejon, 26 I. & N. Dec. 349, 353 (BIA 2014) (recognizing that the BIA is bound by this Court's "interpretation of divisibility under Descamps"). The government has the burden of proving that Omargharib committed an aggravated felony by clear and convincing evidence. Karimi, 715 F.3d at 566.

To qualify as an aggravated felony, Omargharib's conviction must have been "a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(G). Because we

7

conclude that his crime of conviction did not constitute a "theft offense" under the INA, we reverse without reaching Omargharib's alternative argument that his term of imprisonment was for less than one year.

A.

In order to determine whether a state law conviction qualifies as an aggravated felony for removal purposes, we use the categorical approach set forth in Taylor v. United States, 495 U.S. 575 (1990), and recently clarified in Descamps. See United States v. Aparicio-Soria, 740 F.3d 152, 160-61 (4th Cir. 2014) (en banc).[6] Under that approach, we consider only the elements of the statute of conviction rather than the defendant's conduct underlying the offense. Descamps, 133 S. Ct. at 2285 (stating that the categorical approach's "central feature" is "a focus on the elements, rather than the facts, of a crime"). If the state offense has the same elements as the generic INA crime, then the prior conviction constitutes an

[6] Although Taylor discussed divisibility in the context of a sentence enhancement under the Armed Career Criminal Act (ACCA), we have held that it applies equally in the immigration context to determine whether an alien is removable under the INA as a result of a prior conviction. See Karimi, 715 F.3d at 567 n.6. Because Descamps only clarified Taylor's analysis, we hold it also applies here (as several other Circuits have done in the immigration context). Accord Avendano v. Holder, 770 F.3d 731, 734 (8th Cir. 2014); Aguilar-Turcios v. Holder, 740 F.3d 1294, 1299-1300 (9th Cir. 2014).

aggravated felony.  See id., 133 S. Ct. at 2283.  But, if the state law crime "sweeps more broadly" and criminalizes more conduct than the generic federal crime, the prior conviction cannot count as an aggravated felony.  Id.  This is true "even if the defendant actually committed the offense in its generic form."  Id.[7]

Like the BIA, we conclude that the Virginia crime of larceny does not categorically match the INA's theft offense crime because Virginia larceny punishes a broader range of conduct than that federal offense.  Specifically, Virginia law defines larceny to include both fraud and theft crimes.[8]  See

---

[7] The elements-based categorical approach thus avoids the "daunting . . . practical difficulties and potential unfairness" of a facts-based approach.  Id. at 2289.  Among other problems, a facts-based approach would require sentencing courts "to expend resources examining (often aged) documents for evidence that a defendant admitted in a plea colloquy, or a prosecutor showed at trial, facts that, although unnecessary to the crime of conviction, satisfy an element of the relevant generic offense. The meaning of those documents will often be uncertain. And the statements of fact in them may be downright wrong. A defendant, after all, often has little incentive to contest facts that are not elements of the charged offense . . . .").  Id. at 2289.

[8] Although Omargharib was convicted of grand larceny under Va. Code Ann. § 18.2-95, that statute does not define the elements of larceny in Virginia.  Rather, it merely categorizes larceny of more than $200 as "grand larceny" and defines the punishment for that crime.  Id.  The statute thus incorporates Virginia's common-law recitation of the elements for larceny. And although Descamps addressed a state crime defined by statute, we have since held that the Descamps analysis applies to state crimes that, as here, are defined by common law rather
(Continued)

9

<u>Britt v. Commonwealth</u>, 667 S.E.2d 763, 765 (Va. 2008) (Keenan, J.) (defining larceny as "the <u>wrongful or fraudulent</u> taking of another's property without his permission and with the intent to permanently deprive the owner of that property" (emphasis added)); <u>see</u> <u>also</u> <u>Stokes v. Commonwealth</u>, 641 S.E.2d 780, 782, 784 (Va. Ct. App. 2007) (upholding a conviction for grand larceny when the defendant was indicted for defrauding a bank). Indeed, the Supreme Court of Virginia has repeatedly sustained larceny convictions when the property at issue was obtained through fraudulently obtained consent.[9] <u>See, e.g.</u>, <u>Skeeter v. Commonwealth</u>, 232 S.E.2d 756, 758 (Va. 1977); <u>Bourgeois v. Commonwealth</u>, 227 S.E.2d 714, 717 (Va. 1976).

By contrast, the INA expressly distinguishes between theft and fraud offenses. Unlike the INA's theft offense, which is not tied to any dollar threshold, the INA's fraud offense only applies if the loss to the victim exceeds $10,000. <u>Compare</u> 8

---

than by statute. <u>United States v. Hemingway</u>, 734 F.3d 323, 331–33 (4th Cir. 2013).

[9] As these cases demonstrate, a "wrongful" taking means a taking without the victim's consent; a "fraudulent" taking means a taking with the victim's consent that has been obtained fraudulently. As set forth below, both wrongful and fraudulent takings satisfy the "without consent" element of larceny under Virginia law. In contrast, under the generic federal definition of "theft," fraudulent takings do not constitute takings "without consent." <u>See</u> <u>Soliman v. Gonzales</u>, 419 F.3d 276, 282–83 (4th Cir. 2005). The "without consent" element under Virginia law is thus significantly broader than the federal "without consent" element.

10

U.S.C. § 1101(a)(43)(G) (theft) with id. § 1101(a)(43)(M)(i) (fraud). Consistent with this distinction, we have previously held that a conviction for credit card fraud for less than $10,000 under Virginia law does not amount to a "theft offense" or "fraud offense" for purposes of the INA. Soliman, 419 F.3d at 282-83 (noting that any other result would transform all fraud offenses into theft offenses, thus rendering the $10,000 threshold for fraud offenses "superfluous").

In short, Virginia law treats fraud and theft as the same for larceny purposes, but the INA treats them differently. As such, Virginia larceny "sweeps more broadly" than the INA's theft offense. Descamps, 133 S. Ct. at 2283. We therefore conclude that Omargharib's Virginia larceny conviction does not constitute an aggravated felony for purposes of the INA under the categorical approach.

B.

The government claims a different result is warranted under the modified categorical approach. As Descamps recently clarified, the modified categorical approach applies only if a state crime consists of "multiple, alternative elements" creating "several different crimes," some of which would match the generic federal offense and others that would not. 133 S. Ct. at 2284-85. Under this approach, courts may look beyond the

11

statutory text and consult a limited set of documents in the record – so-called Shepard documents[10] – to determine which crime the defendant was convicted of committing. Id. at 2283-84. In this way, the modified approach is a tool for implementing the categorical approach. Id. at 2284.

According to the government, the BIA correctly applied the modified categorical approach and so properly examined the underlying facts of Omargharib's conviction to determine that he was convicted of theft, not fraud.[11] For the following reasons, we disagree.

After Descamps, we may apply the modified categorical approach only if the state crime at issue is divisible. Id. at 2283. A crime is divisible only if it is defined to include "potential offense elements in the alternative," thus rendering "opaque which element played a part in the defendant's conviction." Id. Stated differently, crimes are divisible only if they "set out elements in the alternative and thus create

---

[10] These documents derive their name from the Supreme Court's decision in Shepard v. United States, 544 U.S. 13, 16 (2005). Relevant Shepard documents include the "charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms." Johnson v. United States, 130 S. Ct. 1265, 1273 (2010).

[11] Because we find that the modified categorical approach does not apply, we need not address Omargharib's alternative argument that he would also prevail under that approach because the Shepard documents purportedly do not demonstrate whether he was convicted of a "theft offense."

multiple versions of the crime."[12]   United States v. Montes-Flores, 736 F.3d 357, 365 (4th Cir. 2013).

The government asserts that the Virginia common-law crime of larceny is divisible because it purportedly lists the elements of theft and fraud in the alternative.  See Britt, 667 S.E.2d at 765 (defining "larceny" as a "wrongful or fraudulent taking" (emphasis added)).  In the government's view, the use of the word "or" creates two different versions of the crime of larceny: one involving wrongful takings (theft), and one involving fraudulent takings (fraud).  In this view, the Virginia larceny would be divisible under Descamps and so the modified categorical approach would apply.

As we have previously held, however, use of the word "or" in the definition of a crime does not automatically render the crime divisible.  See United States v. Royal, 731 F.3d 333, 341-42 (4th Cir. 2013); see also Rendon v. Holder, 764 F.3d 1077, 1086-87 (9th Cir. 2014) (reasoning that when a state criminal law "is written in the disjunctive . . . , that fact alone cannot end the divisibility inquiry").  As these cases recognize, a crime is divisible under Descamps only if it is

---

[12] An indivisible crime, by contrast, contains the same elements as the federal crime (or omits an element entirely), but construes those elements expansively to criminalize a "broader swath of conduct" than the relevant federal law. Descamps, 133 S. Ct. at 2281.

defined to include multiple alternative elements (thus creating multiple versions of a crime), as opposed to multiple alternative means (of committing the same crime). Royal, 731 F.3d at 341; United States v. Cabrera-Umanzor, 728 F.3d 347, 353 (4th Cir. 2013); see also Rendon, 764 F.3d at 1086. Elements, as distinguished from means, are factual circumstances of the offense the jury must find "unanimously and beyond a reasonable doubt." Royal, 731 F.3d at 341 (quoting Descamps, 133 S. Ct. at 2288). In analyzing this distinction, we must consider how Virginia courts generally instruct juries with respect to larceny. See id.

Our decision in Royal is particularly instructive. In that case we addressed a crime defined in the alternative – assault under Maryland law – and held that it was indivisible under Descamps. 731 F.3d at 340-341. Like here, the government argued that use of the disjunctive "or" in the definition of assault made the crime divisible, thus warranting application of the modified approach. Id. at 341. But we rejected that argument, holding that the requirements on either side of the "or" were "merely alternative means of satisfying a single element" of assault, rather than alternative elements. Id. at 341. This was true because "Maryland juries are not instructed that they must agree 'unanimously and beyond a reasonable doubt' on whether the defendant caused either 'offensive physical

14

contact' or 'physical harm' to the victim; rather, it is enough that each juror agree only that one of the two occurred, without settling on which." Id.

We likewise conclude here that Virginia juries are not instructed to agree "unanimously and beyond a reasonable doubt" on whether defendants charged with larceny took property "wrongfully" or "fraudulently." Rather, as in Royal, it is enough for a larceny conviction that each juror agrees only that either a "wrongful or fraudulent" taking occurred, without settling on which. By way of example, the Virginia model jury instruction for grand larceny requires only a finding that "the taking was against the will and without the consent of the owner." 2-36 Virginia Model Jury Instructions – Criminal G36.100 (2014). The model instruction does not tell the jury to distinguish between wrongful and fraudulent takings – rather, it only requires a finding of a taking "without the consent of the owner." Id. Moreover, Virginia law has long used the "wrongful" versus "fraudulent" distinction as two different means of satisfying the "without consent" element:

> The common law had substantial difficulty with cases in which the thief, intending permanently to deprive the possessor of his chattel, obtained possession of it with the apparent consent of the possessor by use of some fraud. Such conduct, called larceny by trick, was assimilated into larceny on the theory that consent obtained by fraud was not true consent and hence that the taker

15

had trespassed upon the chattel without consent of the possessor. The Virginia definition [of larceny], by use of the word "fraudulent" has adopted this doctrine and often applied it. This is the theory upon which cashing a forged check becomes larceny.

Ronald J. Bacigal, Larceny and Receiving, in Virginia Practice Series, Va. Prac. Criminal Offenses & Defenses L3 (2014); see also John Wesley Bartram, Note, Pleading for Theft Consolidation in Virginia: Larceny, Embezzlement, False Pretenses and § 19.2-284, 56 Wash. & Lee L. Rev. 249, 260-61 (1999) (noting that Virginia incorporates larceny by trick into its common law larceny definition through the use of the word "fraudulent"); Skeeter, 232 S.E.2d at 758 (holding that personal property acquired with fraudulently obtained consent will sustain a larceny conviction); United States v. Argumedo-Perez, 326 F. App'x 293, 295-98 (5th Cir. 2009) (per curiam) (holding that the "without consent" element of Virginia larceny includes "fraudulently obtained consent" and so a Virginia larceny conviction does not constitute a generic federal theft crime).[13] Put simply, wrongful or fraudulent takings are alternative means of committing larceny, not alternative elements.

---

[13] Although Virginia law does distinguish certain types of fraud offenses from general larceny, see Va. Code Ann. §§ 18.2-111 (proscribing embezzlement), 18.2-178 (proscribing obtaining money by false pretense), the above authorities clearly demonstrate that larceny by trick – a fraud-based offense – is included within Virginia's general definition of larceny.

16

In summary, we conclude that larceny in Virginia law is indivisible as a matter of law. That means only the categorical approach applies. And as established above, Omargharib's larceny conviction is not categorically an INA theft offense. The government makes no meaningful argument to rebut this analysis other than pointing to the disjunctive "or" in Virginia's definition of larceny.[14] As such, it has not satisfied its burden to establish removability by clear and convincing evidence. See Karimi, 715 F.3d at 566.

## III.

Because Omargharib's 2011 conviction for grand larceny, in violation of Va. Code Ann. § 18.2-95, was not a "theft offense" under the INA, the BIA erred as a matter of law in relying on that conviction as a basis to order his removal under 8 U.S.C.

---

[14] The government's policy argument that a ruling in Omargharib's favor will end deportations for theft and fraud crimes in Virginia is not well-founded. Although Virginia larceny convictions will no longer support an "aggravated felony" finding under the INA, "escaping aggravated felony treatment does not mean escaping deportation . . . . It means only avoiding mandatory removal." Moncrieffe, 133 S. Ct. at 1692. A Virginia larceny conviction can still render a non-citizen deportable in some instances, though with the opportunity to seek discretionary relief. See 8 U.S.C. §§ 1227(a)(2)(A)(i), 1229b. Thus, "to the extent that our rejection of the Government's broad understanding of the scope of 'aggravated felony' may have any practical effect on policing our Nation's borders, it is a limited one." Moncrieffe, 133 S. Ct. at 1692 (quoting Carachuri-Rosendo v. Holder, 560 U.S. 563, 581 (2010)).

17

§ 1227(a)(2)(A)(iii). Accordingly, we grant Omargharib's petition for review, reverse the BIA's decision, and remand the action with instructions to vacate Omargharib's order of removal.

PETITION FOR REVIEW GRANTED;
REVERSED AND REMANDED WITH INSTRUCTIONS

NIEMEYER, Circuit Judge, concurring:

I am pleased to concur in Judge Floyd's well-crafted opinion, especially in light of the existing state of the law regarding when to apply the modified categorical approach. Because of the ever-morphing analysis and the increasingly blurred articulation of applicable standards, we are being asked to decide, without clear and workable standards, whether disjunctive phrases in a criminal law define alternative <u>elements</u> of a crime or alternative <u>means</u> of committing it.

More particularly, in this case, we are called upon to decide whether a <u>wrongful</u> taking and a <u>fraudulent</u> taking are alternative <u>elements</u> defining two versions of the crime of larceny or alternative <u>means</u> of committing larceny. While Judge Floyd concludes that the applicable Virginia law defines alternative means, thereby precluding use of the modified categorical approach under current law, I find it especially difficult to comprehend the distinction. Virginia's law could just as easily be viewed as prescribing two crimes: (1) larceny by wrongful taking, and (2) larceny by fraudulent taking.[*]

_____

[*] The applicable statute prohibits "simple larceny not from the person of another of goods and chattels of the value of $200 or more," Va. Code Ann. § 18.2-95(ii), leaving "larceny" to be defined by common law. The Virginia Supreme Court has defined larceny as "the wrongful <u>or</u> fraudulent taking of another's property without his permission and with the intent to
(Continued)

The Supreme Court's recent decision in Descamps v. United States, 133 S. Ct. 2276 (2013), which adopted the elements-versus-means distinction, is the source of much of the confusion. In Descamps, the Court held that it was error to apply the modified categorical approach to determine whether a defendant's prior burglary conviction was for generic burglary when the California statute under which he was convicted prohibited a person from entering specified locations with intent to commit grand or petit larceny or any felony. Id. at 2282. In its discussion, the Court recognized that a hypothetical statute defining burglary as the illegal "entry of an automobile as well as a building" would be divisible, thus justifying application of the modified categorical approach. Id. at 2284 (quoting Taylor v. United States, 495 U.S. 575, 602 (1990)) (internal quotation marks omitted). It similarly noted that it had previously recognized such divisibility in Nijhawan v. Holder, 557 U.S. 29 (2009). To distinguish those cases and others, however, the Descamps Court explained that "[a]ll those decisions rested on the explicit premise that the laws 'contain[ed] statutory phrases that cover several different . . . crimes,' not several different methods of

---

permanently deprive the owner of that property." Britt v. Commonwealth, 667 S.E.2d 763, 765 (Va. 2008) (emphasis added).

20

committing one offense." 133 S. Ct. at 2285 n.2 (quoting Johnson v. United States, 559 U.S. 133, 144 (2010)). While the Court acknowledged that the California statute left open the possibility that several means could be employed to commit burglary, some but not all of which would qualify as generic burglary, it dismissed the concern that "distinguishing between 'alternative elements' and 'alternative means' is difficult," telling us not "to worry." Id. The Court elaborated:

> Whatever a statute lists (whether elements or means), the documents we approved in Taylor and Shepard . . . [will] reflect the crime's elements. So a court need not parse state law in the way the dissent suggests: When a state law is drafted in the alternative, the court merely resorts to the approved documents and compares the elements revealed there to those of the generic offense.

Id. Respectfully, this purportedly comforting language hardly clarifies. Indeed, in dissent, Justice Alito stated:

> While producing very modest benefits at most, the Court's holding will create several serious problems. . . . To determine whether a statute contains alternative elements, as opposed to merely alternative means of satisfying an element, a court . . . will be required to look beyond the text of the statute, which may be deceptive. . . . The only way to be sure whether particular items are alternative elements or simply alternative means of satisfying an element may be to find cases concerning the correctness of jury instructions that treat the items one way or the other. And such cases may not arise frequently.

Id. at 2301-02 (Alito, J., dissenting). In Justice Alito's view, a more practical approach is required.

21

Similarly, in his separate concurring opinion, Justice Kennedy agreed that "the dichotomy between divisible and indivisible state criminal statutes is not all that clear" and suggested that the Court's decision would require state legislatures to amend their statutes to meet the Court's new divisibility requirement. Descamps, 133 S. Ct. at 2293-94 (Kennedy, J., concurring). He indicated that "[t]his is an intrusive demand on the States." Id. at 2294.

The relevant Virginia conviction for grand larceny in this case could have been obtained either by showing that the defendant wrongfully took property, which Judge Floyd notes would constitute a generic theft conviction, or by showing that the defendant fraudulently took property, which he notes would not constitute generic theft. One would think that whether the defendant was convicted of a wrongful taking or a fraudulent taking could appropriately be resolved by looking at the documents identified in Shepard v. United States, 544 U.S. 13 (2005). And this seems to have been the approach taken for years before Descamps. Yet Descamps now applies a confusing layer to this analysis that renders this area of the law unsatisfactorily amorphous by limiting the use of Shepard documents to distinguish elements but not means. Judge Floyd's analysis in this case is thus as good as any.

22

Were the Supreme Court willing to take another look at this area of law, it might well be persuaded, when focusing on the goals of the categorical approach, to simply allow lower courts to consider Shepard documents in any case where they could assist in determining whether the defendant was convicted of a generic qualifying crime. See, e.g., United States v. Gomez, 690 F.3d 194, 204 (4th Cir. 2012) (Niemeyer, J., dissenting) ("In determining what convictions qualify as a sentencing enhancement, courts [should be] authorized to use the modified categorical approach pragmatically whenever the approach yields an answer, in circumstances made ambivalent by an overbroad statute, to whether the prior conviction qualifies as a predicate conviction, so long as the use of the approach avoids 'subsequent evidentiary inquiries in the factual basis for the earlier conviction' and 'collateral trials'" (quoting Shepard, 544 U.S. at 20, 23)). It is difficult to find any downside to such a pragmatic approach. Moreover, such an approach would yield the same result here because no Shepard documents were available to show that Omargharib was convicted of a crime that qualifies as generic theft.