Justice THOMAS, concurring.
I join the Court's opinion, which faithfully applies our precedents. The Court holds that the modified categorical approach cannot be used to determine the specific means by which a defendant committed a crime. Ante, at 2253 - 2254. By rightly refusing to apply the modified categorical approach, the Court avoids further extending its precedents that limit a criminal defendant's right to a public trial before a jury of his peers.
In Almendarez-Torres v. United States, 523 U.S. 224, 246-247, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), the Court held that the existence of a prior conviction triggering enhanced penalties for a recidivist was a fact that could be found by a judge, not an element of the crime that must be found by a jury. Two years later, the Court held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum" is an element *2259 of a crime and therefore "must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) ; see id., at 489-490, 120 S.Ct. 2348. But Apprendi recognized an exception for the "fact of a prior conviction," instead of overruling Almendarez-Torres. See 530 U.S., at 490, 120 S.Ct. 2348. I continue to believe that the exception in Apprendi was wrong, and I have urged that Almendarez-Torres be reconsidered. See Descamps v. United States, 570 U.S. ----, ----, 133 S.Ct. 2276, 2294-2295, 186 L.Ed.2d 438 (2013) (THOMAS, J., concurring in judgment).
Consistent with this view, I continue to believe that depending on judge-found facts in Armed Career Criminal Act (ACCA) cases violates the Sixth Amendment and is irreconcilable with Apprendi . ACCA improperly "allows the judge to 'mak[e] a finding that raises [a defendant's] sentence beyond the sentence that could have lawfully been imposed by reference to facts found by the jury or admitted by the defendant.' " Descamps, supra, at ---- - ----, 133 S.Ct., at 2294-2295 (opinion of THOMAS, J.) (brackets in original; internal quotation marks omitted). This Sixth Amendment problem persists regardless of whether "a court is determining whether a prior conviction was entered, or attempting to discern what facts were necessary to a prior conviction." Id., at ----, 133 S.Ct., at 2294 (citation omitted).
Today, the Court "at least limits the situations in which courts make factual determinations about prior convictions." Ibid. As the Court explains, the means of committing an offense are nothing more than "various factual ways of committing some component of the offense." Ante, at 2249. Permitting judges to determine the means of committing a prior offense would expand Almendarez-Torres . Therefore, I join the Court's opinion refusing to allow judges to determine, without a jury, which alternative means supported a defendant's prior convictions.
Justice BREYER, with whom Justice GINSBURG joins, dissenting.
The elements/means distinction that the Court draws should not matter for sentencing purposes. I fear that the majority's contrary view will unnecessarily complicate federal sentencing law, often preventing courts from properly applying the sentencing statute that Congress enacted. I consequently dissent.
I
The federal statute before us imposes a mandatory minimum sentence upon a person convicted of being a felon in possession of a firearm if that person also has three previous convictions for (among several other things) "burglary." 18 U.S.C. § 924(e)(2)(B)(ii). The petitioner here has been convicted of being a felon in possession, and he previously was convicted of three other crimes that qualify him for the federal mandatory minimum if, but only if, those previous convictions count as "burglary." To decide whether he has committed what the federal statute calls a "burglary," we must look to the state statute that he violated.
The relevant state statute, an Iowa statute, says that a person commits a crime if he (1) "enters an occupied structure," (2) "having no right ... to do so," (3) with "the intent to commit a felony." Iowa Code § 713.1 (2013). It then goes on to define "occupied structure" as including any (1) "building," (2) "structure," (3) "land" vehicle, (4) "water" vehicle, or (5) "air vehicle, or similar place." § 702.12. The problem arises because, as we have previously held, see Taylor v. United *2260 States, 495 U.S. 575, 602, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), if the structure that an offender unlawfully entered (with intent to commit a felony) was a "building," the state crime that he committed counts under the federal statute as "burglary." But if the structure that the offender unlawfully entered was a land, water, or air vehicle, the state crime does not count as a "burglary." Thus, a conviction for violating the state statute may, or may not, count as a "burglary," depending upon whether the structure that he entered was, say, a "building" or a "water vehicle."
Here, if we look at the court documents charging Mathis with a violation of the state statute, they tell us that he was charged with entering, for example, a "house and garage." App. 60-73 (charging documents). They say nothing about any other structure, say, a "water vehicle." Thus, to convict him, the jury-which had to find that he unlawfully entered an "occupied structure"-must have found that he entered a "house and garage," which concededly count as "building [s]." So why is that not the end of this matter? Why does the federal statute not apply?
Just to be sure, let us look at how we previously treated an almost identical instance. In Taylor, a state statute made criminal the "breaking and entering [of] a building, booth, tent, boat, or railroad car." 495 U.S., at 579, n. 1, 110 S.Ct. 2143. We explained that breaking into a building would amount to "burglary" under the federal statute, but breaking into a railroad car would not. But the conviction document itself said only that the offender had violated the statute; it did not say whether he broke into a building or a railroad car. See id., at 598-602, 110 S.Ct. 2143. We said that in such a case the federal sentencing judge could look at the charging papers and the jury instructions in the state case to try to determine what the state conviction was actually for: building, tent, or railroad car. We wrote that
"in a State whose burglary statutes include entry of an automobile as well as a building, if the indictment or information and jury instructions show that the defendant was charged only with a burglary of a building, and that the jury necessarily had to find an entry of a building to convict, then the Government should be allowed to use the conviction for enhancement." Id., at 602, 110 S.Ct. 2143.
(We later added that where a conviction rests upon an offender's guilty plea, the federal judge can look to the facts that the offender admitted at his plea colloquy for the same purpose. See Shepard v. United States, 544 U.S. 13, 20-21, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005).)
So, again, what is the problem? The State's "burglary statut[e] include[s] entry" of a vehicle as well as a "building." Taylor, 495 U.S., at 602, 110 S.Ct. 2143. The conviction document might not specify what kind of a structure the defendant entered (i.e., whether a building or an automobile). But the federal sentencing judge can look at the charging documents (or plea colloquy) to see whether "the defendant was charged only with a burglary of a building." Ibid. And here that was so. In addition, since the charging documents show that the defendant was charged only with illegal entry of a "building"-not a tent or a railroad car-the jury, in order to find (as it did) that the defendant broke into an occupied structure, would "necessarily [have] had to find an entry of a building." Ibid. Hence, "the Government should be allowed to use the conviction for enhancement." Ibid.
The majority, however, does not agree that the two cases I have described are almost identical. To the contrary, it notes correctly that our precedent often uses the word "element" to describe the relevant *2261 facts to which a statute refers when it uses words such as "building," "tent," "boat," or "railroad car." See, e.g., ante, at 2251 - 2252. It points out that, here, the Iowa Supreme Court described those words as referring, not to "elements" of a crime, but rather to "means" through which a crime was committed. See ante, at 2249 - 2250. And that fact, in the majority's view, makes all the difference. See ante, at 2254 - 2256. But why? I, of course, see that there is a distinction between means and elements in the abstract, but-for sentencing purposes-I believe that it is a distinction without a difference.
II
I begin with a point about terminology. All the relevant words in this case, such as "building," "structure," "water vehicle," and the like, are statutory words. Moreover, the statute uses those words to help describe a crime. Further, the statute always uses those words to designate facts . Whether the offender broke into a building is a fact; whether he broke into a water vehicle is a fact. Sometimes, however, a State may treat certain of those facts as elements of a crime. And sometimes a State may treat certain of those facts as means of committing a crime. So far, everyone should agree. See Richardson v. United States, 526 U.S. 813, 817, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999) (describing both "elements" and "means" as "facts"). Where we disagree is whether that difference, relevant to the application of state law, should make a difference for federal sentencing purposes.
III
Whether a State considers the statutory words "boat" or "building" to describe elements of a crime or a means of committing a crime can make a difference for purposes of applying the State's criminal law, but it should not make a difference in respect to the sentencing question at issue here. The majority, I believe, reasons something like this: Suppose the jury unanimously agreed that the defendant unlawfully entered some kind of structure with felonious intent, but the jury is deadlocked six to six as to whether that structure is (1) a "boat" or (2) a "house." If the statute uses those two words to describe two different elements of two different crimes-i.e., (1) breaking into a boat, and (2) breaking into a house-then the defendant wins, for the jury has not found unanimously each element of either crime. But if the statute uses those two words to describe two different means of committing the same crime-i.e., breaking into an occupied structure that consists of either a house or a boat-then the defendant loses, for (as long as the jury decides unanimously that the defendant broke into an occupied structure of whichever kind) the jury need not decide unanimously which particular means the defendant used to commit the crime. See ante, at 2248 - 2250.
I accept that reasoning. But I do not see what it has to do with sentencing. In the majority's view, the label "means" opens up the possibility of a six-to-six jury split, and it believes that fact would prevent us from knowing whether the conviction was for breaking into a "building" or a "boat." See ante, at 2249 - 2250. But precisely the same is true were we to use the label "element" to describe the facts set forth in the state statute. The federal sentencing judge may see on the defendant's record a conviction for violating a particular provision of the state criminal code; that code may list in a single sentence both "buildings" and "boats"; the State may interpret the two words as separate elements of two separate crimes; and the federal judge will not know from the simple fact of conviction for violating the statute (without more) which of the *2262 two crimes was at issue (that is, was it the one aimed at burglaries of buildings, or the one aimed at burglaries of boats?). That is why the Court said in Taylor that in such a case the federal judge may look to the "indictment or information and jury instructions" to determine whether "the jury necessarily had to find an entry of a building," rather than a boat, "to convict." 495 U.S., at 602, 110 S.Ct. 2143. If so, the federal judge may count the conviction as falling within the federal statutory word "burglary" and use it for sentencing.
In my view, precisely the same is true if the state courts label the statute-mentioned facts ("building," "boat," etc.) as "means" rather than "elements." The federal judge should be able to "look ... to" the charging documents and the plea agreement to see if "the jury necessarily had to find an entry of a building," rather than a boat, "to convict." Ibid. If so, the federal judge should be able to count the conviction as a federal-statute "burglary" conviction and use it for sentencing.
Of course, sometimes the charging documents will not give us the answer to the question. But often they will. If, for example, the charging document accuses Smith of breaking and entering into a house (and does not mention any other structure), then (1) the jury had to find unanimously that he broke into a "house," if "house" is an element, and (2) the jury had to find unanimously that he broke into a "house," if "house" is the only means charged. (Otherwise the jury would not have unanimously found that he broke into an "occupied structure," which is an element of the statutory crime.)
Suppose, for example, that breaking into a "building" is an element of Iowa's burglary crime; and suppose the State charges that Smith broke into a building located in Des Moines (and presents evidence at trial concerning only a Des Moines offense), but the jury returns its verdict on a special-verdict form showing that six jurors voted for guilt on the theory that he broke into a building located in Detroit-not Des Moines. The conviction would fail (at least in Iowa), would it not? See, e.g., State v. Bratthauer, 354 N.W.2d 774, 776 (Iowa 1984) ("If substantial evidence is presented to support each alternative method of committing a single crime, and the alternatives are not repugnant to each other, then unanimity of the jury as to the mode of commission of the crime is not required. At the root of this standard is the principle that the unanimity rule requires jurors to be in substantial agreement as to just what a defendant did as a step preliminary to determining whether the defendant is guilty of the crime charged" (emphasis added; citation, brackets, and internal quotation marks omitted)). Similarly, we would know that-if the charging documents claim only that the defendant broke into a house, and the Government presented proof only of that kind of burglary-the jury had to find unanimously that he broke into a house, not a boat. And that is so whether state law considers the statutory word "house" to be an element or a means. I have not found any nonfanciful example to the contrary.
IV
Consider the federal statute before us-the statute that contains the word "burglary"-from a more general sentencing perspective. By way of background, it is important to understand that, as a general matter, any sentencing system must embody a host of compromises between theory and practicality. From the point of view of pure theory, there is much to be said for "real offense" sentencing. Such a system would require a commission or a sentencing judge to determine in some *2263 detail "the actual conduct in which the defendant engaged," i.e., what the defendant really did now and in the past. United States Sentencing Commission (USSC), Guidelines Manual ch. 1, pt. A, p. 5 (Nov. 2015). Such a system would produce greater certainty that two offenders who engaged in (and had previously engaged in) the same real conduct would be punished similarly. See ibid.
Pure "real offense" sentencing, however, is too complex to work. It requires a sentencing judge (or a sentencing commission) to know all kinds of facts that are difficult to discover as to present conduct and which a present sentencing judge could not possibly know when he or she seeks to determine what conduct underlies a prior conviction. Because of these practical difficulties, the USSC created Guidelines that in part reflect a "charge offense" system, a system based "upon the conduct that constitutes the elements of the offense for which the defendant was charged and of which he was convicted." Ibid.
A pure "charge offense" system, however, also has serious problems. It can place great authority to determine a sentence in the hands of the prosecutor, not the judge, creating the very nonuniformity that a commission would hope to minimize. Hence, the actual federal sentencing system retains "a significant number of real offense elements," allowing adjustments based upon the facts of a defendant's case. Id., at 6. And the Commission is currently looking for new ways to create a better compromise. See, e.g., USSC, Amendments to the Sentencing Guidelines, at 24 (Apr. 2016) (effective Nov. 1, 2016) (creating a "sentence-imposed model for determining" whether prior convictions count for sentence-enhancement purposes in the context of certain immigration crimes).
With this background in mind, turn to the federal statute before us. The statute, reflecting the impossibility of knowing in detail the conduct that underlies a prior conviction, uses (in certain cases involving possession of weapons) the fact of certain convictions (including convictions for burglary) as (conclusive) indications that the present defendant has previously engaged in highly undesirable conduct. And, for the general reasons earlier described, it is practical considerations, not a general theory, that would prevent Congress from listing the specific prior conduct that would warrant a higher present sentence. Practical considerations, particularly of administration, can explain why Congress did not tell the courts precisely how to apply its statutory word "burglary." And similar practical considerations can help explain why this Court, in Taylor and later cases, described a modified categorical approach for separating the sheep from the goats. Those cases recognize that sentencing judges have limited time, they have limited information about prior convictions, and-within practical constraints-they must try to determine whether a prior conviction reflects the kind of behavior that Congress intended its proxy (i.e., "burglary") to cover.
The majority's approach, I fear, is not practical. Perhaps the statutes of a few States say whether words like "boat" or "building" stand for an element of a crime or a means to commit a crime. I do not know. I do know, however, that many States have burglary statutes that look very much like the Iowa statute before us today. See, e.g., Colo.Rev.Stat. §§ 18-4-101, 18-4-202, 18-4-203 (2015) ; Mont.Code Ann. §§ 45-2-101, 45-6-201, 45-6-204 (2015); N.H.Rev.Stat. Ann. § 635:1 (2015) ; N.D. Cent. Code Ann. §§ 12.1-22-02, 12.1-22-06 (2012); Ohio Rev.Code Ann. §§ 2909.01, 2911.11 -2911.13 (Lexis 2014) ; 18 Pa. Cons.Stat. Ann. §§ 3501, 3502 (2015); S.D. Codified Laws §§ 22-1-2, *2264 22-32-1, 22-32-3, 22-32-8 (2006) ; Wyo. Stat. Ann. §§ 6-1-104, 6-3-301 (2015) ; see also ALI, Model Penal Code §§ 221.0, 221.1 (1980); cf. Taylor, 495 U.S., at 598, 110 S.Ct. 2143 ("burglary" in the federal statute should reflect the version of burglary "used in the criminal codes of most States"). I also know that there are very few States where one can find authoritative judicial opinions that decide the means/element question. In fact, the Government told us at oral argument that it had found only "two States" that, in the context of burglary, had answered the means/elements question. Tr. of Oral Arg. 45; see id., at 37.
The lack of information is not surprising. After all, a prosecutor often will charge just one (e.g., a "building") of several statutory alternatives. See Descamps v. United States, 570 U.S. ----, ----, 133 S.Ct. 2276, 2283-2284, 186 L.Ed.2d 438 (2013). A jury that convicts, then, would normally have to agree unanimously about the existence of that particular fact. See Richardson, 526 U.S., at 818, 119 S.Ct. 1707 ("Our decision [whether something is an element or a means] will make a difference where ... the Government introduces evidence that the defendant has committed more underlying drug crimes than legally necessary to make up a 'series' "). Hence, it will not matter for that particular case whether the State, as a general matter, would categorize that fact (to which the statute refers) as an "element" or as a "means."
So on the majority's approach, what is a federal sentencing judge to do when facing a state statute that refers to a "building," a "boat," a "car," etc.? The charging documents will not answer the question, for-like the documents at issue here-they will simply charge entry into, say, a "building," without more. But see ante, at 2256 - 2257 (suggesting that a defendant's charging documents will often answer the question). The parties will have to look to other state cases to decide whether that fact is a "means" or an "element." That research will take time and is likely not to come up with an answer. What was once a simple matter will produce a time-consuming legal tangle. See, e.g., State v. Peterson, 168 Wash.2d 763, 769, 230 P.3d 588, 591 (2010) ( " 'There is simply no bright-line rule by which the courts can determine whether the legislature intended to provide alternate means of committing a particular crime. Instead, each case must be evaluated on its own merits' " (brackets omitted)); State v. Brown, 295 Kan. 181, 192, 284 P.3d 977, 987 (2012) (the "alternative means" definition is "mind-bending in its application"). That is why lower court judges have criticized the approach the majority now adopts. See, e.g., Omargharib v. Holder, 775 F.3d 192, 200 (C.A.4 2014) (Niemeyer, J., concurring) ("Because of the ever-morphing analysis and the increasingly blurred articulation of applicable standards, we are being asked to decide, without clear and workable standards, whether disjunctive phrases in a criminal law define alternative elements of a crime or alternative means of committing it.... I find it especially difficult to comprehend the distinction" (emphasis deleted)).
V
The majority bases its conclusion primarily upon precedent. In my view, precedent does not demand the conclusion that the majority reaches. I agree with the majority that our cases on the subject have all used the word "element" in contexts similar to the present context. But that fact is hardly surprising, for all the cases in which that word appears involved elements-or at least the Court assumed that was so. See Descamps, 570 U.S., at ----, n. 2, 133 S.Ct., at 2285, n. 2. In each of *2265 those cases, the Court used the word generally, simply to refer to the matter at issue, without stating or suggesting any view about the subject of the present case. See, e.g., id., at ----, 133 S.Ct., at 2283 ("Sentencing courts may look only to the statutory definitions-i.e., the elements-of a defendant's prior offenses" (internal quotation marks omitted)); Shepard, 544 U.S., at 16-17, 125 S.Ct. 1254 (using the terms "statutory definition" and "statutory elements" interchangeably); Taylor, 495 U.S., at 602, 110 S.Ct. 2143 ("[A]n offense constitutes 'burglary' for purposes of [the Armed Career Criminal Act] if either its statutory definition substantially corresponds to 'generic' burglary, or the charging paper and jury instructions actually required the jury to find all the elements of generic burglary").
The genius of the common law consists in part in its ability to modify a prior holding in light of new circumstances, particularly where, as Justice Holmes said, an existing principle runs up against a different principle that requires such modification. See Holmes, The Path of the Law, 10 Harv. L. Rev. 457, 469 (1897). A fortiori, we should not apply this Court's use of a word in a prior case-a word that was not necessary to the decision of the prior case, and not intended to set forth a generally applicable rule-to a new circumstance that differs significantly in respect to both circumstances and the legal question at issue.
Does Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), require the majority's result here? There we held that any fact ("[o]ther than the fact of a prior conviction") that must be proved in order to increase the defendant's sentence above what would otherwise be the statutory maximum must be proved to a jury beyond a reasonable doubt. Id., at 490, 120 S.Ct. 2348. Where, as here, the State charges only one kind of "occupied structure"-namely, entry into a "garage"-that criterion is met. The State must prove to the jury beyond a reasonable doubt that the defendant unlawfully entered a garage. And that is so, whether the statute uses the term "garage" to refer to a fact that is a means or a fact that is an element. If the charging papers simply said "occupied structure," leaving the jury free to disagree about whether that structure was a "garage" or was, instead, a "boat," then we lack the necessary assurance about jury unanimity; and the sentencing judge consequently cannot use that conviction as a basis for an increased federal sentence. And that is true whether the state statute, when using the words "garage" and "boat," intends them to refer to a fact that is a means or a fact that is an element.
What about Descamps ? The statute there at issue made it a crime to "ente [r] certain locations with intent to commit grand or petit larceny or any felony." 570 U.S., at ----, 133 S.Ct., at 2282 (internal quotation marks omitted). The statute made no distinction between (1) lawful entry (e.g., entering a department store before closing time) and (2) unlawful entry (e.g., breaking into a store after it has closed). See ibid. The difference matters because unlawful entry is a critical constituent of the federal statute's version of "burglary." If the entry is lawful, the crime does not fall within the scope of that word.
We held that a conviction under this statute did not count as a "burglary" for federal purposes. We reasoned that the statute required the Government only to prove "entry," that there was no reason to believe that charging documents would say whether the entry was lawful or unlawful, and that, "most important[ly]," even if they did, the jury did not have to decide that *2266 the entry was unlawful in order to convict (that is, any description in the charging document that would imply or state that the entry was illegal, say, at 2:00 in the morning, would be coincidental). Id., at ----, 133 S.Ct., at 2290 ; see id., at ----, 133 S.Ct., at 2288.
Here, by way of contrast, the charging documents must allege entry into an "occupied structure," and that "structure" can consist of one of several statutory alternatives. Iowa Code §§ 713.1, 702.12. The present law thus bears little resemblance to the hypothetical statute the majority describes. That hypothetical statute makes it a crime to break into a "premises" without saying more. Ante, at 2255 - 2256. Thus, to apply the federal sentencing statute to such a nonspecific, hypothetical statute would require sentencing judges to "imaginatively transfor[m]" "every element of [the] statute ... so that [the] crime is seen as containing an infinite number of sub-crimes corresponding to 'all the possible ways an individual can commit' " the crime-an impossibly difficult task. Descamps, 570 U.S., at ---- - ----, 133 S.Ct. at 2291.
But the Iowa statute before us contains explicit (not hypothetical) statutory alternatives, and therefore it is likely (not unlikely) that the charging documents will list one or more of these alternatives. Indeed, that is the case with each of Mathis' charging documents. See App. 60-73. And if the charging documents list only one of these alternatives, say, a "building," the jury normally would have to find unanimously that the defendant entered into a building in order to convict. See Bratthauer, 354 N.W.2d, at 776. To repeat my central point: In my view, it is well within our precedent to count a state burglary conviction as a "burglary" within the meaning of the federal law where (1) the statute at issue lists the alternative means by which a defendant can commit the crime (e.g., burgling a "building" or a "boat") and (2) the charging documents make clear that the state alleged (and the jury or trial judge necessarily found) only an alternative that matches the federal version of the crime.
Descamps was not that kind of case. It concerned a statute that did not explicitly list alternative means for commission of the crime. And it concerned a fact extraneous to the crime-the fact (whether entry into the burgled structure was lawful or unlawful) was neither a statutory means nor an element. As the Court in that case described it, the fact at issue was, under the state statute, a "legally extraneous circumstanc[e]" of the State's case. 570 U.S., at ----, 133 S.Ct., at 2288. But this case concerns a fact necessary to the crime (regardless of whether the Iowa Supreme Court generally considers that fact to be a means or an element).
Precedent, by the way, also includes Taylor . And, as I have pointed out, Taylor says that the modified categorical approach it sets forth may "permit the sentencing court to go beyond the mere fact of conviction in a narrow range of cases where a jury was actually required to find all the elements of generic burglary." 495 U.S., at 602, 110 S.Ct. 2143. Taylor is the precedent that I believe governs here. Because the majority takes a different view, with respect, I dissent.