**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-1539

CONROY STEVE GORDON,

Petitioner,

v.

WILLIAM P. BARR, Attorney General,

Respondent.

------------------------------

NATIONAL IMMIGRATION PROJECT OF THE NATIONAL LAWYERS GUILD,

Amicus Supporting Petitioner.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued: May 5, 2020                                         Decided: July 8, 2020

Before KING, KEENAN, and RUSHING, Circuit Judges.

Petition for review granted, order of removal vacated, and remanded with directions by published opinion. Judge Keenan wrote the opinion, in which Judge King and Judge Rushing joined.

**ARGUED:** Samantha Shinsato Lee, WILEY REIN, LLP, Washington, D.C.; Jenny Kim, CAPITAL AREA IMMIGRANTS' RIGHTS (CAIR) COALITION, Washington, D.C., for

Petitioner. Sabatino Fioravante Leo, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Adina Appelbaum, CAPITAL AREA IMMIGRANTS' RIGHTS (CAIR) COALITION, Washington, D.C., for Petitioner. Joseph H. Hunt, Assistant Attorney General, Anthony P. Nicastro, Assistant Director, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. Khaled Alrabe, NATIONAL IMMIGRATION PROJECT OF THE NATIONAL LAWYERS GUILD, Boston, Massachusetts, for Amicus Curiae.

---

BARBARA MILANO KEENAN, Circuit Judge:

In this case, we consider whether Conroy Gordon's prior misdemeanor conviction under Virginia Code § 18.2-280(A), for willful discharge of "any firearm" in a public place without resulting bodily injury, qualifies as a federal "firearm offense" for purposes of removal under the Immigration and Nationality Act (INA), 8 U.S.C. § 1227(a)(2)(C) (the INA removal statute). An immigration judge (IJ) concluded that because "antique firearms" are excluded from the federal definition of a firearm offense but are not excluded from coverage under Virginia Code § 18.2-280(A), Gordon had not committed a removable offense. However, the Board of Immigration Appeals (the BIA) disagreed, ordering Gordon's removal. The BIA concluded that Gordon was required, but failed, to show "that there has been a [conviction] under [the Virginia statute] for conduct involving an antique firearm," or that a Virginia court had issued a decision "explicitly" stating that Virginia Code § 18.2-280(A) includes the use of antique firearms.

Upon our review, we conclude that the government has failed to meet its burden of proving that Gordon is subject to removal. We hold that the plain language of Virginia Code § 18.2-280(A), as supported by later acts of Virginia's legislature and by decisions of its appellate courts, prohibits conduct involving the use of "any firearm," including antique firearms. Thus, Gordon was not required to identify a prosecution under the Virginia statute involving an antique firearm to defend against removal. Accordingly, because the conduct punishable under Virginia Code § 18.2-280(A) is broader than the conduct encompassed by the federal definition of a "firearm offense," Gordon's conviction under the Virginia statute was not a basis for his removal under the INA removal statute.

3

For this reason, we grant Gordon's petition for review, vacate the BIA's order of removal, and remand with direction that the government facilitate Gordon's return to the United States.

## I.

Conroy Gordon, a citizen of Jamaica, was admitted to the United States in 1992, at the age of 23, as a lawful permanent resident. Gordon obtained permanent resident status under 8 U.S.C. § 1153(a)(2)(B), based on his status as an unmarried child of an "alien" who lawfully had been admitted for permanent residence. In 2008, Gordon was convicted in Virginia of a misdemeanor offense, namely, the willful discharge of "any firearm" in a public place without resulting bodily injury, in violation of Virginia Code § 18.2-280(A) (the Virginia conviction). Gordon was sentenced to ten days' imprisonment to be served on weekends.

Virginia Code § 18.2-280(A) provides:

> If any person willfully discharges or causes to be discharged *any firearm* in any street in a city or town, or in any place of public business or place of public gathering, and such conduct results in bodily injury to another person, he shall be guilty of a Class 6 felony. If such conduct does not result in bodily injury to another person, he shall be guilty of a Class 1 misdemeanor.[1]

(emphasis added).

---

[1] Subsections (B) and (C) of Virginia Code § 18.2-280 enhance the sentence if a firearm is discharged near a school. *Id.* § 18.2-280(B), (C). Subsection (D) establishes an exception for law enforcement officers engaged in official duties. *Id.* § 18.2-280(D). And Subsection (E) states that the government may elect to prosecute under "any other applicable provision of law instead of this section." *Id.* § 18.2-280(E).

In 2017, about nine years after Gordon's misdemeanor conviction, the Department of Homeland Security (DHS) issued Gordon a notice to appear, charging him as removable based on the Virginia conviction. DHS contended that the Virginia conviction qualified as a removable offense under the INA removal statute, which defines "[c]ertain firearm offenses" as follows:

> Any alien who at any time after admission is *convicted under any law* of purchasing, selling, offering for sale, exchanging, *using*, owning, possessing, or carrying, or of attempting or conspiring to purchase, sell, offer for sale, exchange, use, own, possess, or carry, any weapon, part, or accessory which is *a firearm* or destructive device (*as defined in [18 U.S.C. § 921(a)]*) in violation of any law is deportable.[2]

8 U.S.C. § 1227(a)(2)(C) (emphasis added). A "firearm" is defined in 18 U.S.C. § 921(a)(3) as:

> (A) any weapon . . . which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. *Such term does not include an antique firearm.*

(emphasis added). Thus, the federal definition of "firearm" that applies to the INA removal statute explicitly excludes antique firearms. In contrast, the statutory language in Virginia Code § 18.2-280(A) applies to "any firearm," and does not state an exception for antique firearms.

Relying on this distinction, Gordon filed a motion to terminate the removal proceedings, arguing that the Virginia conviction did not qualify as a removable firearm

---

[2] Notably, this provision applies to "any" violation of the law and does not require that the violation qualify as a "felony," unlike many other removable offenses under the INA. *See, e.g.*, 8 U.S.C. § 1101(a)(43)(A)-(U) (listing numerous federal generic offenses that qualify as an "aggravated felony" for purposes of removal).

offense under the INA. The IJ granted Gordon's motion, concluding that Virginia Code § 18.2-280(A), which does not provide an exception for antique firearms and encompasses use of "any firearm," is broader in scope than the INA's federal firearm offense.

The government appealed the IJ's decision to the BIA. In reversing the IJ's decision, the BIA acknowledged that the Virginia statute was facially broader than the INA's federal firearm offense. However, relying on dictum in the Supreme Court's decision in *Moncrieffe v. Holder*, 569 U.S. 184 (2013), the BIA held that Gordon was required, but failed, to show there was a "realistic probability" that the Commonwealth would prosecute a case under Virginia Code § 18.2-280(A) when the firearm in question was an "antique." *Moncrieffe*, 569 U.S. at 205-06 (stating that when employing the categorical approach to compare the federal firearm offense with a state firearm offense lacking an antique weapon exception, a respondent "would have to demonstrate that the State actually prosecutes the relevant offense in cases involving antique firearms").

Because Gordon presented neither a decision by a Virginia court in which a defendant had been convicted under Section 18.2-280(A) for using an antique firearm, nor a decision by a Virginia court that explicitly defined the word "firearm" as used in Section 18.2-280(A) to include antique firearms, the BIA held that Gordon failed to make the required showing and was removable under the INA removal statute.[3] The BIA ultimately entered an order of removal.

---

[3] On remand to the IJ, Gordon continued to contest his removability. He also filed an application for cancellation of removal under 8 U.S.C. § 1229b(a), which the IJ granted. Although the government conceded that Gordon was eligible for cancellation of removal, (Continued)

Gordon filed this petition for review and a motion for stay of removal. After this Court denied the motion for stay, Gordon was removed to Jamaica. Gordon now asks that we grant his petition for review and order the United States government to facilitate his return to this country.

II.

A.

The central issue before us is whether the willful discharge of "any firearm" in a public place without resulting bodily injury, as prohibited by Virginia Code § 18.2-280(A) (alternatively, the Virginia offense), renders a noncitizen removable under the INA removal statute. Gordon argues that the government has failed to demonstrate that the Virginia offense qualifies as a removable offense, because the plain language of the statute, as well as Virginia appellate court decisions, establish that the discharge of "*any* firearm," including antique firearms, is prohibited under Virginia Code § 18.2-280(A) (emphasis added).

In response, the government maintains that neither the statutory language nor the cited Virginia court decisions directly address whether the term "any firearm," as used in Section 18.2-280(A), encompasses antique firearms. According to the government,

_____

it appealed to the BIA arguing that Gordon did not merit relief in the exercise of discretion. Gordon filed a cross-appeal reasserting his claim that the Virginia crime did not qualify as a removable offense. The BIA ruled in favor of the government, denying Gordon's request for cancellation of removal and, in a footnote, reaffirmed the prior ruling that the Virginia conviction qualified as a removable offense.

7

Gordon was required under the *Moncrieffe* dictum to identify a decision by a Virginia court in which an individual was convicted under Section 18.2-280 for discharging an antique firearm in a public place. Because Gordon has not identified such a decision, the government argues that the BIA correctly concluded that Gordon is subject to removal based on his Virginia conviction. We disagree with the government's position.

B.

We review de novo the BIA's decision. *Omargharib v. Holder*, 775 F.3d 192, 196 (4th Cir. 2014). Although our review of a decision involving the BIA's interpretation of the INA generally warrants deference, no such deference is owed to the BIA's construction of state law, which does not lie within the BIA's expertise.[4] *Ramirez v. Sessions*, 887 F.3d 693, 702 (4th Cir. 2018); *Omargharib*, 775 F.3d at 196.

In asserting that Gordon is removable based on his Virginia conviction, the government bears the burden of proving removability "by clear and convincing evidence." 8 U.S.C. § 1229a(c)(3)(A); *Omargharib*, 775 F.3d at 196; *Salem v. Holder*, 647 F.3d 111, 114 (4th Cir. 2011); *see also* 8 C.F.R. § 1240.8(a). Thus, in the present case, the

---

[4] The government observes that the BIA relied in part on a precedential decision, *In re Chairez*, 26 I. & N. Dec. 349, 356 (BIA 2014), *vacated in part on other grounds by* 26 I. & N. Dec. 478 (BIA 2015), in which the BIA held that "a [s]tate firearms statute that contains no exception for 'antique firearms' is categorically overbroad . . . only if the alien demonstrates that the [s]tate statute has, in fact, been successfully applied to prosecute offenses involving antique firearms." The government therefore maintains that this Court should afford *Chevron* deference to the BIA's decision in *In re Chairez*. We disagree. The analysis employed by the BIA in *In re Chairez* did not involve interpretation of the INA, but rather addressed application of the categorical approach to a state statute as described by the Supreme Court in *Moncrieffe*. This question presents an issue of law that we review de novo, *see Castillo v. Holder*, 776 F.3d 262, 267 (4th Cir. 2015), and we do not accord the deference urged by the government.

8

government bears the burden of proving that Gordon's Virginia conviction qualifies as a federal "firearm offense" for purposes of the INA removal statute. *See Omargharib*, 775 F.3d at 196; *Karimi v. Holder*, 715 F.3d 561, 566 (4th Cir. 2013).

When determining whether a state conviction qualifies as a removable offense under the INA, we use the familiar categorical approach set forth by the Supreme Court in *Taylor v. United States*, 495 U.S. 575 (1990). *See Castendet-Lewis v. Sessions*, 855 F.3d 253, 260 (4th Cir. 2017). Under this approach, we do not consider the petitioner's criminal conduct underlying the conviction, but instead focus on the statutory definition of the state offense. *Id.* When that definition has been interpreted by the state's appellate courts, that interpretation is compelling in our analysis. *United States v. Aparicio-Soria*, 740 F.3d 152, 154 (4th Cir. 2014) (en banc).

If the elements of the state offense fall within the definition of the federal offense under the INA, then the state offense qualifies as a removable offense. *Omargharib*, 775 F.3d at 196. But if the state offense "sweeps more broadly," criminalizing more conduct than the federal offense, the prior conviction does not qualify as a removable offense. *See id.* (quoting *Descamps v. United States*, 570 U.S. 254, 261 (2013)).

C.

With this legal framework in mind, we turn to consider the Virginia offense of willful discharge of a firearm, as set forth in Virginia Code § 18.2-280(A). We review both the statutory language and any interpretation of that language rendered by Virginia's appellate courts. *See Castillo v. Holder*, 776 F.3d 262, 269 (4th Cir. 2015).

9

As explained above, the plain language of Section 18.2-280(A) prohibits the willful discharge of "*any* firearm" in certain public places. Va. Code § 18.2-280(A) (emphasis added). No language in the statute narrows or otherwise restricts this broad term. By choosing to prohibit the discharge of "*any* firearm" in a public place, rather than "*a* firearm*,*" the General Assembly of Virginia manifested a clear intent to bring all firearms within the ambit of the statute, irrespective whether they are more recently manufactured or are antique. As the Court of Appeals of Virginia recognized in *Gerald v. Commonwealth*, 805 S.E.2d 407, 411 (Va. Ct. App. 2017), a central purpose of Section 18.2-280 is to address "the physical danger [that] the discharge of a firearm in such a place would pose to the general public." This evident statutory purpose, confirmed by Virginia's intermediate appellate court, underscores the General Assembly's clear intent to protect the general public from the discharge of "*any* firearm" in places where the public may freely move and gather.

We also observe that the Supreme Court of Virginia considered the identical term "any firearm" in the context of former Virginia Code § 18.2-308.2,[5] in deciding whether that term prohibited convicted felons from possessing inoperable firearms. *Armstrong v. Commonwealth*, 562 S.E.2d 139, 140-41 (Va. 2002). The court concluded that given the absence of statutory language restricting the term "any firearm," the Virginia General Assembly intended to define broadly the category of firearms that felons were barred from

---

[5] At the time *Armstrong* was decided, former Virginia Code § 18.2-308.2 provided in relevant part: "it is unlawful for a person previously convicted of a felony 'to knowingly and intentionally possess . . . any firearm.'" *Armstrong*, 562 S.E.2d at 140.

10

possessing. *Id.* at 144-45. Accordingly, the court held that the term "any firearm" included all firearms without regard to whether the weapon presently was operable. *Id*. at 145-46.

Our analysis of the plain language of Section 18.2-280 also is supported by recent enactments of Virginia's legislature explicitly excluding "antique firearms" in the language of certain laws governing the regulation and possession of firearms. For example, in 2017, the General Assembly amended Section 18.2-308.2[6] to permit certain classes of felons to possess "antique firearms," *see* Va. Code § 18.2-308.2(C)(2). This amendment complied with the Supreme Court of Virginia's direction in *Armstrong* that "express language" in a statute was necessary to limit the broad scope of the term "any firearm." 562 S.E.2d at 145.

Additionally, Virginia Code § 18.2-308.2:2, which mandates criminal record checks for the transfer of certain firearms, states that its requirements are inapplicable to "antique firearms." Va. Code § 18.2-308.2:2(I). And the General Assembly recently amended and reenacted Section 18.2-308.2:2(R), which addresses limitations on the purchase of more than one handgun within a 30-day period and excludes from this limitation "the purchase of antique firearms." *Id.* § 18.2-308.2:2(R)(2)(e); 2020 Va. Laws ch. 991 (H.B. 812) (Apr. 9, 2020). These statutory provisions demonstrate that when the Virginia legislature has sought to narrow the applicability of a statute to exclude "antique firearms," the legislature has done so explicitly.

---

[6] *See* 2017 Va. Laws ch. 767 (S.B. 1533) (Mar. 27, 2017).

Our analysis of Section 18.2-280(A) thus is dictated by the plain language of the statute, which has not been narrowed by the General Assembly to exclude "antique firearms." *See United States v. Simms*, 914 F.3d 229, 240-41 (4th Cir. 2019) (en banc) (explaining that "[t]he text of a statute is a court's first and foremost guide to its meaning"). When, as here, a state legislature has expressed its intent in plain and unambiguous terms, that statutory language governs our application of the categorical approach. *See Soliman v. Gonzales*, 419 F.3d 276, 278, 285 (4th Cir. 2005) (analyzing Virginia statute prohibiting "credit card fraud," and explaining that the statutory language covered broader circumstances than "taking of property" as required for a "theft offense" under the INA, 8 U.S.C. § 1101(a)(43)(G)); *see also Salmoran v. Att'y Gen.*, 909 F.3d 73, 76, 82 (3d Cir. 2018) (in applying the categorical approach, court explained that the state statute, by its language, "plainly encompasse[d] more conduct than its federal counterpart"). Therefore, we conclude that, in Section 18.2-280(A), Virginia has defined the crime of willful discharge of any firearm in a public place to encompass a broader range of conduct than that covered by the INA removal statute, which excludes "antique firearms." *See Omargharib*, 775 F.3d at 196 (quoting *Descamps*, 570 U.S. at 261). Accordingly, the Virginia offense does not qualify as a removable offense under the INA removal statute. *See id.*

D.

Our conclusion is not affected by the government's claim that the Virginia conviction nevertheless qualifies as a removable offense because Gordon failed to present evidence of a conviction in Virginia under Section 18.2-280(A) for the discharge of an

12

antique firearm. The government's argument is based on the dictum from *Moncrieffe v. Holder*, 569 U.S. 184 (2013), noted above, in which the Supreme Court stated that "[t]o defeat the categorical comparison" of a federal firearm offense with a state offense that lacks an exception for antique firearms, "a noncitizen would have to demonstrate that the State actually prosecutes the relevant offense in cases involving antique firearms."[7] *Id.* at 205-06 (discussing *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)).

The flaw in the government's argument, however, is its failure to recognize that when the state, through plain statutory language, has defined the reach of a state statute to include conduct that the federal offense does not, the categorical analysis is complete; there is no categorical match. Here, the plain language of Section 18.2-280(A), supported by decisions of Virginia's courts and actions of the General Assembly, make clear that

---

[7] The government also argues that we have articulated the categorical approach as necessarily requiring a petitioner or defendant in every case to show an actual case of prosecution by the state. We disagree. Most of the decisions relied on by the government presented the question whether the state offense contained an element requiring the quantum of force sufficient to qualify as a "crime of violence" or "violent felony." *See United States v. Battle*, 927 F.3d 160, 164 (4th Cir. 2019); *United States v. Drummond*, 925 F.3d 681, 688-90 (4th Cir. 2019); *United States v. Covington*, 880 F.3d 129, 135 (4th Cir. 2018); *United States v. Winston*, 850 F.3d 677, 684 (4th Cir. 2017); *United States v. Doctor*, 842 F.3d 306, 308-10 (4th Cir. 2016); *see also United States v. Diaz*, 865 F.3d 168, 171, 178 (4th Cir. 2017) (considering whether a federal offense qualified as a crime of violence under the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A). These decisions do not involve an unambiguous state statute that punishes a broader range of circumstances than the federal offense under comparison. *See also United States v. Cammorto*, 859 F.3d 311, 315-18 (4th Cir. 2017) (concluding that the state crime matched the federal offense before considering whether there was a "realistic probability" that the state would prosecute in a manner that fell outside the scope of the federal offense); *Castillo*, 776 F.3d at 264-70 & n.5 (reviewing application of a state statute that on its face did not demonstrate that "unauthorized use of a motor vehicle" encompassed "de minimis takings," which fell outside a federal "theft offense" under the INA).

discharge of an antique firearm is conduct prohibited under that statute. In such circumstances, the burden does not shift to the respondent to "find a case" in which the state successfully prosecuted a defendant for the overbroad conduct.[8]

This conclusion is supported by the Supreme Court's analysis in *Mathis v. United States*, 136 S. Ct. 2243 (2016), issued three years after *Moncrieffe*. In *Mathis*, applying the categorical approach, the Court considered the plain language of Iowa's burglary statute, which applied to a broader set of circumstances than generic burglary, namely, unlawful entry into "any building, structure, [or] land, water, or air vehicle." 136 S. Ct. at 2250 (alteration in original) (emphasis omitted). Because generic burglary requires unlawful entry into only a "building or other structure," the Iowa crime did not qualify as a predicate offense under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(ii) (the ACCA). *Id.* at 2247-48, 2250-51.

---

[8] We observe that the government relies on decisions by this Court purportedly requiring application of a "realistic probability" test, when those holdings did *not* require the petitioner or defendant to "find a case" in which the state applied its statute to conduct that fell outside the federal offense. *See Cabrera v. Barr*, 930 F.3d 627, 636-38 (4th Cir. 2019) (relying on Virginia state court statutory interpretations in its analysis under the categorical approach that "requires us to 'presume that the prior conviction rested upon nothing more than the least of the acts criminalized and then determine whether even those acts are encompassed by' the statute" (citation omitted)); *United States v. Simmons*, 917 F.3d 312, 320 (4th Cir. 2019) (relying on state court interpretation of mens rea element to conclude state statute punishes broader conduct than generic offense); *Larios-Reyes v. Lynch*, 843 F.3d 146, 158-60 (4th Cir. 2016) (considering Maryland courts' interpretation of statutory terms to conclude state offense of third degree sex offense was broader than "sexual abuse of a minor" under 8 U.S.C. § 1101(a)(43)(A) without requiring a showing of actual prosecution for overbroad conduct).

14

The Court in *Mathis* held that the "undisputed disparity" between the Iowa statutory language and the generic offense resolved the case in the defendant's favor. *Id.* at 2251. And, notably, the Court explained that the "longstanding principles" of the categorical approach are applicable "regardless of whether a statute omits or instead specifies alternative possible means of commission." *Id.* Thus, as the Court instructed, overbreadth in the state statutory language under comparison may manifest itself either by omission (here, by omitting an exclusion for antique weapons together with use of the word "any") or by specifying additional means of commission. *See id.*

We also observe that our decision in the present case is in accord with analyses conducted by our sister circuits. For example, the Second Circuit, employing a plain language analysis in a removal case brought under the INA, concluded that because a New York statute prohibiting the transfer of marijuana "on its face punishe[d] conduct classified as a federal misdemeanor" offense, the state offense did not qualify as an aggravated felony offense under the INA, 8 U.S.C. § 1227(a)(2)(A)(iii). *Hylton v. Sessions*, 897 F.3d 57, 59 (2d Cir. 2018). The court held that any purported requirement to show a "realistic probability" that New York applied the statute to prosecute conduct that would qualify as a federal misdemeanor offense was "obviated by the wording of the state statute."[9] *Id.* at

---

[9] *See also Singh v. Att'y Gen.*, 839 F.3d 273, 286 & n.10 (3d Cir. 2016) ("The BIA erred in conducting a 'realistic probability' inquiry," because "[h]ere, the elements of the crime of conviction are not the same as the elements of the generic federal offense" and "[t]he Supreme Court has never conducted a 'realistic probability' inquiry in such a case"); *Ramos v. U.S. Att'y Gen.*, 709 F.3d 1066, 1072 (11th Cir. 2013) (explaining that the "realistic probability" showing by a petitioner is not needed when the state statutory language demonstrates that it punishes crimes that do not qualify as the federal offense). (Continued)

63; *see also United States v. Titties*, 852 F.3d 1257, 1274-75 (10th Cir. 2017) (holding that state crime of pointing a firearm did not qualify as predicate offense under the ACCA, and stating that "reasonable probability" test did not apply when plain statutory language provided means of commission beyond scope of predicate offense under the ACCA); *Chavez-Solis v. Lynch*, 803 F.3d 1004, 1010 (9th Cir. 2015) ("when a 'state statute's greater breadth is evident from its text,' a petitioner need not point to an actual case applying the statute of conviction in a nongeneric manner" (citation omitted)). Accordingly, we conclude that the *Moncrieffe* dictum does not require a petitioner to "find a case" in which the state successfully prosecuted a defendant for the overbroad conduct when, as here, the language of a statute unambiguously is broader than the federal offense under comparison.

III.

Gordon next asks us to order the government to facilitate his return to the United States. Because U.S. Immigration and Customs Enforcement (ICE) has issued a policy[10] indicating that it will facilitate the return of removed non-citizens who prevail on their petitions for review before a federal court of appeal, we conclude that Gordon's request is reasonable and that the government should be directed to comply with this existing policy.

---

*But see United States v. Castillo-Rivera*, 853 F.3d 218, 223 (5th Cir. 2017) (en banc) (explaining "[t]here is no exception to the actual case requirement . . . where a court concludes a state statute is broader on its face" than the comparable federal offense).

[10] U.S. Immigration and Customs Enf't, Policy Directive 11061.1, *Facilitating the Return to the United States of Certain Lawfully Removed Aliens* (Feb. 24, 2012) https://www.ice.gov/doclib/foia/dro_policy_memos/11061.1_current_policy_facilitating_return.pdf.

16

*See Ramirez*, 887 F.3d at 706-07 (observing that "judicial review would otherwise be frustrated" if the petitioner is not restored to the status he had before removal).

IV.

For the reasons stated, we hold that the BIA erred as a matter of law when it concluded that the offense of willful discharge of any firearm under Virginia Code § 18.2-280(A) qualifies as a federal firearm offense under the INA removal statute. We therefore grant Gordon's petition for review, vacate the order of removal, and remand with direction that the government facilitate Gordon's return to the United States.

*PETITION FOR REVIEW GRANTED,*
*ORDER OF REMOVAL VACATED,*
*AND REMANDED WITH DIRECTIONS*