**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 21-7447**

———————

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

ANTONIO LAMONT LIGHTFOOT,

Defendant – Appellant.

———————

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Peter J. Messitte, Senior District Judge.  (8:99-cr-00409-PJM-1; 8:16-cv-01915-PJM)

———————

Argued:  September 20, 2023                    Decided:  October 18, 2024

———————

Before AGEE, RUSHING, and BENJAMIN, Circuit Judges.

———————

Affirmed by published opinion.  Judge Rushing wrote the majority opinion, in which Judge Agee joined.  Judge Benjamin wrote a dissenting opinion.

———————

**ARGUED:** Paresh S. Patel, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greenbelt, Maryland, for Appellant.  Jefferson McClure Gray, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.  **ON BRIEF:** James Wyda, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Baltimore, Maryland, for Appellant.  Erek L. Barron, United States Attorney, Baltimore, Maryland, Ellen Nazmy, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee.

———————

RUSHING, Circuit Judge:

Antonio Lamont Lightfoot is serving a life sentence under 18 U.S.C. § 3559(c), the federal "three-strikes" law. As relevant here, that law mandates a life sentence after a third conviction for a "serious violent felony." *Id.* Lightfoot moved to vacate his sentence pursuant to 28 U.S.C. § 2255, contending that his conviction for Michigan bank robbery—his second strike—no longer qualifies as a serious violent felony. The district court rejected that argument and denied his motion. We affirm.

## I.

In 2000, a jury in the District of Maryland convicted Lightfoot of bank robbery, in violation of 18 U.S.C. § 2113, and using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). The Government informed the district court that Lightfoot had two prior convictions for serious violent felonies: a 1985 conviction for an armed bank robbery in Virginia and a 1990 conviction for armed bank robberies in Michigan.[1] The Maryland bank robbery, therefore, was Lightfoot's third strike, and the district court sentenced him to mandatory life imprisonment for that offense, *see* 18 U.S.C. § 3559(c)(1)(A)(i), and a consecutive seven years' imprisonment for using a firearm. Lightfoot appealed, and we affirmed his convictions and sentence. *United States v.*

---

[1] Lightfoot was convicted of two counts of Michigan bank robbery after he robbed the same bank on two separate occasions. These two convictions count as only one strike, however, because Lightfoot was convicted for both robberies on the same day. *See* 18 U.S.C. § 3559(c)(1)(B).

*Lightfoot*, 6 Fed. App. 181 (4th Cir. 2001). His subsequent collateral challenges were unsuccessful.

In 2015, the Supreme Court held that the "residual clause" of the "violent felony" definition in the Armed Career Criminal Act (ACCA) was unconstitutionally vague. *Johnson v. United States*, 135 S. Ct. 2551, 2557 (2015); *see* 18 U.S.C. § 924(e)(2)(B). The Court subsequently applied that rule retroactively to cases on collateral review. *Welch v. United States*, 136 S. Ct. 1257, 1265 (2016). In response, Lightfoot sought and received permission to file a successive § 2255 motion. He argued that the residual clause of the "serious violent felony" definition in 18 U.S.C. § 3559(c) was similarly void for vagueness. While Lightfoot's motion was pending, the Supreme Court applied *Johnson* to invalidate the residual clauses of two other federal statutes, and Lightfoot supplemented his motion to incorporate those decisions. *See Sessions v. Dimaya*, 138 S. Ct. 1204, 1210 (2018); *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019).

In the district court, Lightfoot argued that, without the residual clause, Michigan bank robbery is not a serious violent felony because it does not satisfy either remaining clause of that definition, the "enumerated offenses clause" or the "force clause." The district court disagreed and denied Lightfoot's motion. The court held that Michigan bank robbery is a divisible offense and Lightfoot was convicted of the assaultive version, which is a serious violent felony under the enumerated offenses clause. *United States v. Lightfoot*, 554 F. Supp. 3d 762, 768, 770 (D. Md. 2021).

Lightfoot appealed, and this Court granted a certificate of appealability to address "whether Michigan bank robbery, Mich. Comp. Laws § 750.531, qualifies as a serious

3

violent felony for purposes of 18 U.S.C. § 3559(c) (the federal three-strikes law)." J.A. 188. We consider this legal question de novo. *United States v. Johnson*, 915 F.3d 223, 227 (4th Cir. 2019).

## II.

The three-strikes law mandates a life sentence for a defendant convicted of a "serious violent felony" in federal court if, "on separate prior occasions," that defendant has been convicted in state or federal court of "2 or more serious violent felonies." 18 U.S.C. § 3559(c)(1)(A). The term "serious violent felony" means:

> (i) a Federal or State offense, by whatever designation and wherever committed, consisting of . . . robbery (as described in section 2111, 2113, or 2118); [other enumerated crimes]; or attempt, conspiracy, or solicitation to commit any of the above offenses; and

> (ii) any other offense punishable by a maximum term of imprisonment of 10 years or more that has as an element the use, attempted use, or threatened use of physical force against the person of another or that, by its nature, involves a substantial risk that physical force against the person of another may be used in the course of committing the offense.

*Id.* § 3559(c)(2)(F). Clause (i) is known as the "enumerated offenses clause," while (ii) contains the "force" and "residual" clauses. The Government concedes that the residual clause is unconstitutionally vague. So we must determine whether Lightfoot's Michigan bank robbery offense qualifies as a serious violent felony under the enumerated offenses clause or the force clause.

## A.

At the outset, the parties dispute what Michigan crime we should be analyzing. The Government contends that Michigan's bank robbery statute is divisible into two offenses

4

and that Lightfoot was convicted of the more serious crime, assaultive bank robbery. Lightfoot argues that the statute is indivisible and so we must assess the least culpable conduct covered by the entire law.

1.

Section 3559(c) asks whether the federal or state "offense," not the defendant's actions, consists of an enumerated offense or has force as an element. We therefore "apply a 'categorical approach,'" *Johnson*, 915 F.3d at 228, which requires that "we counterintuitively ignore . . . the defendant's actual conduct" and instead assess "whether the most innocent conduct that the law criminalizes" satisfies the definition of a serious violent felony, *United States v. Allred*, 942 F.3d 641, 648 (4th Cir. 2019) (internal quotation marks omitted).

When the statute at issue is divisible, we apply a modified categorical approach. "Divisible statutes set forth 'multiple, alternative versions of the crime,' with distinct elements, while indivisible statutes merely set out different means of completing the crime." *United States v. Jackson*, 32 F.4th 278, 284 (4th Cir. 2022) (quoting *Descamps v. United States*, 570 U.S. 254, 257 (2013)). "Elements, as contrasted with means, are the 'constituent parts of a crime's legal definition' that the 'prosecution must prove to sustain a conviction' and which 'the jury must find beyond a reasonable doubt to convict the defendant.'" *Allred*, 942 F.3d at 648 (quoting *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016)). Under the modified categorical approach, a court may consult a limited set of record documents "for the sole purpose of determining 'what crime, with what elements, a defendant was convicted of.'" *Id.* (quoting *Mathis*, 136 S. Ct. at 2249). Once the court

5

has "isolated the specific crime underlying the defendant's conviction, it must then apply the categorical approach to that crime to determine if it constitutes" a serious violent felony. *Id.*

2.

In assessing divisibility, we begin with the text of the Michigan law. *See United States v. Cornette*, 932 F.3d 204, 211 (4th Cir. 2019). It states:

> Any person who, with intent to commit the crime of larceny, or any felony, shall confine, maim, injure or wound, or attempt, or threaten to [do so], or shall put in fear any person for the purpose of stealing from any building, bank, safe, or other depository of money, bond or other valuables, or shall by intimidation, fear or threats compel, or attempt to compel any person to disclose or surrender the means of opening any building, bank, safe, vault or other depository of money, bonds, or other valuables, or shall attempt to break, burn, blow up or otherwise injure or destroy any safe, vault or other depository of money, bonds or other valuables in any building or place, shall, whether he succeeds or fails in the perpetration of such larceny or felony, be guilty of a felony, punishable by imprisonment in the state prison for life or any term of years.

Mich. Comp. Laws Ann. § 750.531. The law is not a model of clarity, but it bears several indicia of divisibility.

First, the statute is phrased disjunctively, using the word "or" to separate the different kinds of prohibited conduct. "When a criminal statute is phrased disjunctively it serves as a signal that it may well be divisible." *Allred*, 942 F.3d at 649; *see also Jackson*, 32 F.4th at 285–286.

Second, the statutory alternatives bar two significantly different categories of behavior. One prohibited category of conduct involves harm or threats against *people*, punishing a person who:

6

shall confine, maim, injure or wound, or attempt, or threaten to [do so], or shall put in fear any person for the purpose of stealing from any building, bank, safe, or other depository of money, bond or other valuables, or shall by intimidation, fear or threats compel, or attempt to compel any person to disclose or surrender the means of opening any building, bank, safe, vault or other depository of money, bonds, or other valuables.

Mich. Comp. Laws Ann. § 750.531.  The other prohibited category involves harm exclusively to *property*, punishing a person who: "shall attempt to break, burn, blow up or otherwise injure or destroy any safe, vault or other depository of money, bonds or other valuables in any building or place." *Id.*  The conduct involving harm to people "'differs so significantly' from that [causing] damage to property" as to strongly indicate that those statutory alternatives are not merely different means of committing the same crime. *Allred*, 942 F.3d at 650 (quoting *Chambers v. United States*, 555 U.S. 122, 126 (2009)).  In other words, "[t]hat the kind of conduct proscribed by the different formulations of [the crime] differs quite significantly suggests that, for purposes of our [serious violent felony] analysis, the different formulations should be treated as separate crimes warranting the use of the modified categorical approach." *United States v. Vinson*, 794 F.3d 418, 425 (4th Cir. 2015).

Third, the statute's people and property variants are akin to "fully functioning, stand-alone, alternative definitions of the offense itself." *Vinson*, 794 F.3d at 426 (emphasis omitted); *see also Allred*, 942 F.3d at 651.  Unlike a nonexhaustive list of various acts or objects that satisfy one element of a crime, the statutory alternatives here are complete definitions of the crime, each with "its own unique set of elements." *Vinson*, 794 F.3d at 425; *cf. Cornette*, 932 F.3d at 211.  This too indicates "that they operate as alternate

definitions or elements for the offense . . . , not alternate means of committing the offense." *Vinson*, 794 F.3d at 426.

Extrinsic sources reinforce our textual conclusion. Michigan's model jury instructions provide alternate instructions for assaultive bank robbery (involving harm or threat to a person) and safe breaking (involving harm only to property). *See* Mich. Model Crim. Jury Instr. §§ 18.5, 18.6 (2006); *People v. Saunders*, No. 300128, 2012 WL 1367572, at *5 (Mich. Ct. App. Apr. 19, 2012) (using safe breaking jury instructions). This strongly suggests that the two statutory alternatives are different crimes with different elements, on which the jury must agree, rather than merely different means of accomplishing one crime, on which jurors could disagree yet nevertheless convict. *See Jackson*, 32 F.4th at 286–287 (finding jury instructions probative); *Allred*, 942 F.3d at 650–651 (same).

Michigan case law also supports this view. The Michigan Supreme Court has not opined on the subject, but the Michigan Court of Appeals has explained that "[Section] 750.531 . . . encompasses two distinct offenses: the assaultive crime of bank robbery perpetrated by any of several enumerated means, and the nonassaultive crime of safe breaking." *People v. Douglas*, 478 N.W.2d 737, 738–739 (Mich. Ct. App. 1991); *see also People v. McMahon*, No. 302037, 2012 WL 3020391, at *2 (Mich. Ct. App. July 24, 2012) ("The crime of bank robbery thus can be committed in two forms: the assaultive form of bank robbery, or the non-assaultive form of safe-breaking."). A leading treatise on Michigan criminal law reads the caselaw exactly this way. *See* 2 Gillespie Mich. Crim. L. & Proc. § 6:122 (3d ed.) ("The statute encompasses two distinct offenses: the assaultive

8

crime of bank robbery perpetrated by any of several enumerated means, and the nonassaultive crime of safe breaking.").

Lightfoot insists that the Michigan Court of Appeals' decision in *People v. Ford* requires a contrary conclusion, seizing on the court's statement that "MCL 750.531 establishes only *one offense* that may be committed by *multiple means*." 687 N.W.2d 119, 126 (Mich. Ct. App. 2004). The district court correctly rejected that argument because the *Ford* court was not discussing the elements-versus-means dichotomy relevant to our divisibility analysis. The *Ford* court was resolving a double jeopardy challenge and made this statement in the context of affirming its precedent that "[t]he 'unit of prosecution' under MCL 750.531 is the bank, vault, or safe," such that the robbery of a single bank is "one offense" for double jeopardy purposes. *Ford*, 687 N.W.2d at 127; *see also id.* at 125–127 (discussing *People v. Shipe*, 476 N.W.2d 490 (Mich. Ct. App. 1991)); *Shipe*, 476 N.W.2d at 493 (holding that "a defendant cannot be convicted of more than one bank robbery offense for taking money from multiple tellers during one robbery of a single bank").

Analogizing to other instances where "a statute may be violated by multiple means, [yet] only one criminal offense is created," the *Ford* court noted that, under Michigan's first-degree murder statute, premeditated murder and felony murder arising from the death of the same victim constitute one "offense" for double jeopardy purposes. *Ford*, 687 N.W.2d at 126 (citing *People v. Bigelow*, 581 N.W.2d 744, 745–746 (Mich. Ct. App. 1998)). Obviously, that limitation does not prevent premeditated murder and felony murder from being different crimes defined by different elements within a divisible first-

9

degree murder statute. *Cf. Jackson*, 32 F.4th at 285 (finding federal first-degree murder statute divisible between premeditated and felony murder). Indeed, like the district court here, the Sixth Circuit has concluded that Section 750.531 is divisible and that *Ford* does not dictate otherwise. *See United States v. Goodson*, 700 Fed. App. 417, 422 (6th Cir. 2017); *see also United States v. Lucas*, 736 Fed. App. 593, 596 (6th Cir. 2018) (relying on *Goodson*'s divisibility analysis).

Because Section 750.531 is divisible, we can consult Lightfoot's charging documents "to determine which alternative formed the basis of [his] prior conviction." *Descamps*, 570 U.S. at 257. Those documents show that Lightfoot was twice convicted of assaultive bank robbery. *See* J.A. 127–129, 132–133 (Lightfoot "did with the intent to commit the crime of robbery, put in fear" two victims "for the purpose of stealing money from a bank"). Therefore, assaultive bank robbery is the offense we must compare to the serious violent felony definition.

### B.

We turn now to whether Michigan assaultive bank robbery is a serious violent felony under the federal three-strikes law. Because, like the district court, we conclude that it qualifies under the enumerated offenses clause, we do not analyze the force clause.

### 1.

Under the enumerated offenses clause, a serious violent felony includes "a Federal or State offense, by whatever designation and wherever committed, consisting of . . . robbery (as described in section 2111, 2113, or 2118)." 18 U.S.C. § 3559(c)(2)(F)(i). The

10

referenced federal offenses are maritime or territorial robbery (Section 2111), bank robbery (Section 2113), and robbery of a controlled substance (Section 2118).

As we have previously explained, "Congress could hardly have been clearer in the text of the statute that § 3559(c)'s enumerated clause should be understood broadly." *Johnson*, 915 F.3d at 229. It listed more than a dozen distinct types of criminal offenses—including robbery—and used broad language "meant to capture a wide variety of state and federal offenses." *Id.* (contrasting Section 3559(c) with ACCA). The clause's inclusivity is "nowhere truer than for robbery," because Congress provided case-specific carve-outs (unavailable for other enumerated offenses) for robberies that did not result in serious bodily injury or involve a dangerous weapon.[2] *Id.*; *see* 18 U.S.C. § 3559(c)(3)(A). Because Congress "has already provided a fact-based escape hatch," "courts must be especially cautious in carving [additional] exceptions to § 3559(c) for the various state robbery offenses." *Johnson*, 915 F.3d at 229.

Accordingly, when assessing whether a prior robbery offense qualifies as a serious violent felony under the enumerated offenses clause, courts "look to the essential nature of [the] crime." *Id.* We do not attempt to match a state crime to its federal counterpart element-by-element, nor do we attempt to divine a "generic" version of the enumerated offense. Rather, we ask if the state offense "reflects the essence of robbery as Congress described it in § 3559(c)." *Id.* at 230.

---

[2] Lightfoot's Michigan bank robbery convictions do not qualify for these exceptions.

The essence of robbery in the federal statutes referenced by the enumerated offenses clause "is a taking from another by force and violence, or by intimidation." *Id.* at 233. State statutes may vary in the words they use and level of specificity they provide. But a state robbery statute that involves taking from another by force or putting in fear is covered, regardless of "minor definitional tweaks or wrinkles in individual jurisdictions." *Id.* at 229. For example, all three listed federal robbery statutes require a taking or attempted taking "from the person or presence of another." *See* 18 U.S.C. §§ 2111, 2113, 2118. But in *Johnson*, we concluded that state robbery statutes without "a presence requirement" are not excluded from qualifying as serious violent felonies if they "do share with the referenced federal statutes the essential elements of taking from another by force and violence, or by intimidation." 915 F.3d at 232.

2.

Applying this standard, Michigan assaultive bank robbery reflects the essence of federal robbery. It involves an intended taking from another by acts that "confine, maim, injure or wound, or attempt, or threaten [to do so]," or "put in fear any person for the purpose of stealing" or compel or attempt to compel a person "by intimidation, fear or threats." Mich. Comp. Laws Ann. § 750.531. While there are differences between the federal robbery statutes and Michigan's statute, the State need not "cut-and-paste federal verbiage into [its] state law" for the state offense to share the essential characteristics of those federal robbery offenses. *Johnson*, 915 F.3d at 231. The essence of both Michigan

12

assaultive bank robbery and the enumerated federal offenses is a taking from another by force or violence or by intimidation or putting in fear.[3]

Lightfoot's only counterargument is that assaultive bank robbery "can be accomplished by confining another," for example, "by merely locking someone in a room," which he claims would not require force or intimidation. Reply Br. 23–24; Oral Arg. 14:45–15:08, 20:34–20:48. The dissent, similarly, hypothesizes a robbery accomplished by confinement through deceit. With respect, these hypotheticals cannot be squared with Michigan law.

When the Michigan legislature enacted this bank robbery statute in 1877,[4] "confine" meant much the same thing as it does today: to restrain or imprison, whether "by threats of violence with a present force, or by physical restraint of the person." *Confinement*, Black's Law Dictionary (1st ed. 1891); *Confinement*, Walker & Webster Combined Dictionary of the English Language (1877) ("[r]estraint; imprisonment"); *Confine*, Worcester Dictionary of the English Language (1877) ("to restrain"; "to imprison"). Viewing the term in isolation, it may not necessarily require force or threat of force against a person. But the context of Michigan's robbery jurisprudence strongly suggests that robbery by

---

[3] The enumerated offenses clause includes "attempt, conspiracy, or solicitation to commit" robbery, 18 U.S.C. § 3559(c)(2)(F)(i), so Michigan's inclusion of overt acts done for the purpose of stealing that fall short of completed robbery does not push its statute outside the bounds of the clause.

[4] *See* 1877 Mich. Pub. Acts 86, No. 111, *as codified at* Mich. Comp. Laws § 16748 (1929).

confinement requires force or intimidation, just like all the other assaultive acts listed in the bank robbery statute.

Michigan courts instruct that "the assaultive offense of bank robbery . . . require[s] the use of force or intimidation against another person." *Douglas*, 478 N.W.2d at 739. They consistently describe assaultive bank robbery as involving "assaultive conduct against a person." *People v. Clemons*, No. 291434, 2010 WL 2629880, at *7 (Mich. Ct. App. July 1, 2010); *see also Ford*, 687 N.W.2d at 127. This is unsurprising, because like many jurisdictions, Michigan's concept of robbery is larceny "with the additional element of violence or intimidation." *People v. Chamblis*, 236 N.W.2d 473, 481 (Mich. 1975), *overruled on other grounds by People v. Cornell*, 646 N.W.2d 127, 139–140 (Mich. 2002); *see also People v. Williams*, 814 N.W.2d 270, 279–280 (Mich. 2012) ("[T]he greater social harm perpetrated in a robbery is the use of force rather than the actual taking of another's property. . . . Robbery, while containing elements of theft of property, is primarily an assaultive crime." (internal quotation marks omitted)); *People v. Yeager*, 999 N.W.2d 490, 500 (Mich. 2023) (identifying "the use of force" as the difference between larceny and robbery). Lightfoot's suggestion that assaultive bank robbery could be accomplished by confining a person without force or intimidation sits uneasily with Michigan's conception of robbery generally and assaultive bank robbery more specifically.

Perhaps that is why Lightfoot has not identified any case where confinement without force or fear was the basis of an assaultive bank robbery conviction under Section 750.531. This omission is telling, because when a defendant asserts that certain minimum conduct would sustain a conviction for a state crime, he "must 'demonstrate that the State actually

14

prosecutes the relevant offense in cases' in the manner [he] claims." *United States v. Battle*, 927 F.3d 160, 164 (4th Cir. 2019) (quoting *Moncrieffe v. Holder*, 569 U.S. 184, 206 (2013)); *see also Moncrieffe*, 569 U.S. at 191 ("[O]ur focus on the minimum conduct criminalized by the state statute is not an invitation to apply legal imagination to the state offense." (internal quotation marks omitted)).

Lightfoot asserts that he need not show a "realistic probability" that bank robbery committed by confining a person without force or intimidation would actually be punished as assaultive bank robbery because the "plain language" of the statute "criminalizes the act of confining another." Reply Br. 26. But the essence of robbery as Congress described it in the enumerated offenses clause does not exclude robbery by confinement. It excludes takings accomplished without force or violence or by intimidation or putting in fear. To defeat the categorical comparison between the state and federal robbery offenses, therefore, Lightfoot must do more than show that his hypothesized minimum conduct fits within the four corners of the state statute, i.e., that it is "theoretical[ly] possib[le]" to prosecute such conduct under the statute. *Moncrieffe*, 569 U.S. at 206. He must show a "realistic probability" that the State would apply its assaultive bank robbery statute to the hypothesized non-assaultive conduct. *Id.*; *cf. United States v. Taylor*, 142 S. Ct. 2015, 2024–2025 (2022).

That's why this case is not like *Gordon v. Barr*, 965 F.3d 252 (4th Cir. 2020), on which Lightfoot relies. In *Gordon*, the Court found a categorical mismatch between a Virginia statute prohibiting the willful discharge of "any firearm" in a public place and a federal offense applying to "a firearm," defined to exclude antique firearms. 965 F.3d at

15

254–255.  After consulting "later acts of Virginia's legislature" and "decisions of its appellate courts," we concluded that "any firearm" within the Virginia statute did in fact prohibit willful discharge of antique firearms.  *Id.* at 254; *see also id.* at 258–259.  Gordon's failure to cite a case explicitly applying the statute to an antique firearm did not defeat his argument because "the plain language of [the statute], supported by decisions of Virginia's courts and actions of the General Assembly, ma[d]e clear that discharge of an antique firearm is conduct prohibited under that statute," not merely a theoretical possibility.  *Id.* at 260.

By contrast, Lightfoot cites no Michigan judicial decisions or Michigan laws in support of his capacious construction of "confine."  Nor does the plain text resolve the question by referring, for example, to "confinement by deceit" or even "confinement by any means."  This contrasts with the cases from other circuits on which Lightfoot relies. *Cf.*, *e.g.*, *Harrington v. United States*, 689 F.3d 124, 130 (2d Cir. 2012) (discussing a Connecticut law defining "restrain" to include restricting a person's movement by "deception"); *United States v. Gilbert*, 464 F.3d 674, 677 (7th Cir. 2006) (discussing an Indiana statute prohibiting "remov[ing] another person, by fraud").  In short, unlike *Gordon*, here we have no indication that "confine" should be read to the theoretical limit that Lightfoot proposes.

Instead, as previously explained, Michigan courts have consistently interpreted assaultive bank robbery, like other forms of robbery, to "require the use of force or intimidation against another person," with no exception ever uttered for robbery by confinement.  *Douglas*, 478 N.W.2d at 739; *see also Chamblis*, 236 N.W.2d at 481.  That

16

accords with the statutory context, where "confine" is listed alongside "maim, injure, or wound," "put in fear," and compel "by intimidation, fear or threats." Mich. Comp. Laws Ann. § 750.531. The possibility that Michigan would punish under this statute a larceny committed without force or putting in fear remains purely hypothetical.[5]

III.

In conclusion, Michigan's bank robbery statute encompasses two divisible offenses. Lightfoot was convicted of assaultive bank robbery, the essence of which is the same as that of the federal robbery offenses in the enumerated offenses clause: "a taking from another by force and violence, or by intimidation." *Johnson*, 915 F.3d at 233. His Michigan assaultive bank robbery conviction therefore qualifies as a serious violent felony under the federal three-strikes clause and continues to support his life sentence. The judgment of the district court is

*AFFIRMED*.

---

[5] The dissent relies on an unpublished decision from the Michigan Court of Appeals for the proposition that a robber need not "'actually threaten a bank teller with harm.'" Dissenting Op. at 21 (quoting *People v. Madison*, No. 316580, 2014 WL 4495223, at *2 (Mich. Ct. App. Sept. 11, 2014)). That accords with our analysis, which does not depend on an express threat of physical harm. In that case, the court found the evidence sufficient to prove that the bank teller was put in fear by the "implied threat" the defendant's actions communicated. *Madison*, 2014 WL 4495223, at *2.

17

DEANDREA GIST BENJAMIN, Circuit Judge, dissenting:

I would reverse the denial of Lightfoot's 28 U.S.C. § 2255 motion because Michigan assaultive bank robbery ("assaultive bank robbery"), in its least culpable form, is not a serious violent felony under the federal three-strikes law. *See* 18 U.S.C. § 3559(c)(1). Therefore, Lightfoot's assaultive bank robbery convictions are not a "strike" against him sufficient to sustain his mandatory life sentence. Because the majority holds the opposite—that assaultive bank robbery is *categorically* a serious violent felony—I must respectfully dissent.

## I.

Under the three-strikes law, a person convicted in federal court "of a serious violent felony shall be sentenced to life imprisonment" if that person has already been convicted "on separate prior occasions" of at least two serious violent felonies. 18 U.S.C. § 3559(c)(1)(A)(i). Relevant here, a "serious violent felony" is

> (i)     a Federal or State offense, by whatever designation and wherever committed, consisting of . . . robbery (as described in section 2111, 2113, or 2118) **[the "enumerated offenses clause"]** . . . and
>
> (ii)    any other offense punishable by a maximum term of imprisonment of 10 years or more that has as an element the use, attempted use, or threatened use of physical force against the person of another **[the "force clause"]** . . . .

18

*Id.* § 3559(c)(2)(F)(i)–(ii).  For a robbery statute to amount to a serious violent felony under these clauses, it must involve the use or threat of physical force.  *See id.*; *see also infra* Part II.

In 1990, Lightfoot was twice convicted of assaultive bank robbery under Michigan law.\*  That statute provides:

> Any person who, with intent to commit the crime of larceny, or any felony, shall confine, maim, injure or wound, or attempt, or threaten to confine, kill, maim, injure or wound, or shall put in fear any person for the purpose of stealing from any building, bank, safe or other depository of money, bond or other valuables, or shall by intimidation, fear or threats compel, or attempt to compel any person to disclose or surrender the means of opening any building, bank, safe, vault or other depository of money, bonds, or other valuables, . . . shall, whether he succeeds or fails in the perpetration of such larceny or felony, be guilty of a felony, punishable by imprisonment in the state prison for life or any term of years.

Mich. Comp. Laws Ann. § 750.531.

To determine whether that offense is a serious violent felony, we use the categorical approach, as the majority explains.  Maj. Op. at 5.  Under that approach, we do not consider Lightfoot's underlying conduct but instead focus on the elements of his crime.  *See Mathis v. United States*, 579 U.S. 500, 504 (2016).  We then ask whether that crime—here, assaultive bank robbery—matches the crimes described in the enumerated offenses clause

---

\* I assume without deciding that the Michigan bank robbery statute is divisible, as the majority holds.  Maj. Op. at 10.  That is, it consists of two, alternative versions of a single crime: safecracking and assaultive bank robbery.  *See* Mich. Comp. Laws Ann. § 750.531.  Because Lightfoot was convicted of assaultive bank robbery, I analyze whether that version of the crime meets the serious violent felony definition.  *See* Maj. Op. at 10.

19

or the force clause. "If any—even the least culpable—of the acts criminalized does not require the kind of conduct" that those clauses contemplate, then it is not a serious violent felony. *United States v. Redd*, 85 F.4th 153, 162 (4th Cir. 2023) (internal quotation marks omitted).

## II.

In my view, assaultive bank robbery, *in its least culpable form*, can be accomplished without the use or threat of physical force. Therefore, it is not a serious violent felony under the enumerated offenses clause or the force clause.

## A.

First, assaultive bank robbery is not a serious violent felony under the enumerated offenses clause. That clause defines a serious violent felony as "a Federal or State offense, by whatever designation and wherever committed, consisting of," for our purposes, "robbery (as described in section 2111, 2113, or 2118 [of Title 18])." 18 U.S.C. § 3559(c)(2)(F)(i). The enumerated federal robbery statutes are 18 U.S.C. § 2111 (maritime and territorial robbery), § 2113 (bank robbery), and § 2118 (robbery of a controlled substance). Each requires "a taking from another by force and violence, or by intimidation." *United States v. Johnson*, 915 F.3d 223, 233 (4th Cir. 2019).

The majority concludes that assaultive bank robbery shares those "essential characteristics of [the] federal robbery offenses" and is therefore a categorical match. Maj. Op. at 12. In doing so, it relies on *United States v. Johnson*, 915 F.3d 223 (4th Cir. 2019), but that case is distinguishable. There, the court held that a New York robbery offense is

a serious violent felony under the three-strikes law's enumerated offenses clause. *Johnson*, 915 F.3d at 233. The New York offense bans the forcible stealing of property. N.Y. Penal Law § 160.05. Forcible stealing under New York law requires the "use[] or threat[] [of] the immediate use of physical force upon another person." *Id.* § 160.00. The court reasoned that "the essence of robbery in New York," then, "is just the same as that of the [enumerated] federal robbery statutes . . . which is a taking from another by force and violence, or by intimidation." *Johnson*, 915 F.3d at 233.

The same is not true here. Unlike the enumerated federal robbery offenses, assaultive bank robbery has no requirement of force, violence, or intimidation. It can be committed simply by putting someone in fear, or as Lightfoot notes, confining another. *See* Mich. Comp. Laws Ann. § 750.531. If the Michigan legislature intended for those actions to require force, violence, or intimidation, it would have said so, as it did later in the statute. *See id.* ("shall *by intimidation, fear or threats* compel") (emphasis added).

True, Michigan courts generally describe assaultive bank robbery as involving "assaultive conduct against a person." Maj. Op. at 14 (internal quotation marks omitted). But not always. In analyzing the language "put in fear," for instance, the Michigan Court of Appeals held that under the assaultive bank robbery statute, "*there is no requirement that a defendant actually threaten a bank teller with harm.*" *People v. Madison*, Docket No. 316580, 2014 WL 4495223, at *2 (Mich. Ct. App. Sept. 11, 2014) (emphasis added). The court reasoned that "the plain language" of the statute does not demand a showing of "intimidation or threats." *Id.* Rather, "it is enough to show that [the] defendant put in fear any person for the purpose of stealing"—just what the statute says. *Id.*; *see* Mich. Comp.

21

Laws Ann. § 750.531; *see also United States v. Goodson*, 700 F. App'x 417, 423 (6th Cir. 2017) ("Under Michigan law, it is not necessary to use threats or intimidation to place someone in fear.").

The same analysis applies to "confine[ment]." Mich. Comp. Laws Ann. § 750.531. Like putting someone in fear, confinement, by its plain meaning, does not require force, violence, or intimidation. *See Confinement*, Black's Law Dictionary (1st ed. 1891) (defining "confinement" as "either a moral or a physical restraint"); *Confinement*, An American Dictionary of the English Language (1865) (defining "confinement" as "any restraint of liberty by force or other obstacle, or by necessity").

The majority faults Lightfoot for "not identify[ing] any case where confinement without force or fear was the basis of an assaultive bank robbery conviction under Section 750.531." Maj. Op. at 14. And the majority is correct that "there must be a realistic probability, not a theoretical possibility, that the minimum conduct would actually be punished under the statute." *United States v. Allred*, 942 F.3d 641, 648 (4th Cir. 2019) (internal quotation marks omitted).

But Lightfoot need not prove that realistic probability here, where the statute explicitly proscribes nonviolent and nonthreatening conduct, and the Michigan Court of Appeals confirmed that assaultive bank robbery requires no such conduct. *See Madison*, 2014 WL 4495223, at *2; *see also Gordon v. Barr*, 965 F.3d 252, 260 (4th Cir. 2020) ("[W]hen the state, through plain statutory language, has defined the reach of a state statute to include conduct that the federal offense does not . . . there is no categorical match."); *Hylton v. Sessions*, 897 F.3d 57, 63 (2d Cir. 2018) ("The realistic probability test is

22

obviated by the wording of the state statute, which on its face extends to conduct beyond the definition of the corresponding federal offense."); *United States v. Titties*, 852 F.3d 1257, 1274–75 (10th Cir. 2017) (because of the plain statutory text, "no legal imagination is required to see that the threatened use of physical force is not necessary for a conviction under [the statute]").

Because assaultive bank robbery "sweeps more broadly and criminalizes more conduct" than the enumerated federal robbery statutes, it is not a serious violent felony under the enumerated offenses clause. *Omargharib v. Holder*, 775 F.3d 192, 196 (4th Cir. 2014) (internal quotation marks omitted).

## B.

Nor is assaultive bank robbery a serious violent felony under the force clause. The force clause defines a "serious violent felony" as any offense "that has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 3559(c)(2)(F)(ii). And "physical force" means intentional violence. *Redd*, 85 F.4th at 161–62.

The Michigan Court of Appeals has already clarified that assaultive bank robbery by putting someone in fear does not require "intimidation or threats," let alone the use or attempted use of physical force. *Madison*, 2014 WL 4495223, at *2.

The same is true of confinement, which can be effectuated through nonviolent and nonthreatening means, including deceit. *See, e.g.*, *United States v. Picazo-Lucas*, 821 F. App'x 335, 338–41 (5th Cir. 2020) (federal Hostage Taking Act does not have as " 'an element the use, attempted use, or threatened use of physical force' " because seizing or

23

detaining someone can be accomplished through deception); *Harrington v. United States*, 689 F.3d 124, 130–31 (2d Cir. 2012) (Connecticut unlawful restraint statute, which criminalizes "restrain[ing] another" in a way that exposes that person "to a substantial risk of physical injury," does not have " 'an element the use, attempted use, or threatened use of physical force' "); *United States v. Gilbert*, 464 F.3d 674, 677 (7th Cir. 2006) (Indiana criminal confinement statute does not require physical force or threat of force, even though it "likely is used to effectuate the restraint in most instances"); *United States v. Stapleton*, 440 F.3d 700, 701, 703 (5th Cir. 2006) (Louisiana crime of false imprisonment while armed with a dangerous weapon does not have an " 'element the use, attempted use, or threatened use of physical force' " because it "requires only that the offender intentionally confine or detain the victim without consent," which could include "deception or trickery").

Consider a hypothetical.  Suppose a hotel guest is reading on her balcony when a staff member enters the room.  He explains he is there to fix a maintenance issue.  He closes the balcony door and surreptitiously locks it, thereby "confin[ing]" her.  Mich. Comp. Laws Ann. § 750.531.  He then steals her valuables before opening the door to tell her the issue is resolved.  Or suppose at some point, the guest becomes aware she is confined on the balcony.  She tries to alert the staff member, but he flees with her valuables.  Either way, his conduct does not involve the "use, attempted use, or threatened use of physical force against the person of another."  18 U.S.C. § 3559(c)(2)(F)(ii).  Yet he would still be guilty of assaultive bank robbery: (1) "with intent to commit the crime of larceny, or any felony" (2) he "confine[d]" a hotel guest on the balcony (3) "for the purpose of stealing from any

24

building, bank, safe or other depository of money, bond or other valuables." Mich. Comp. Laws Ann. § 750.531.

In its least culpable form, assaultive bank robbery does not require "the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 3559(c)(2)(F)(ii). Thus, it is not a serious violent felony under the force clause.

## III.

For these reasons, Lightfoot's assaultive bank robbery convictions do not qualify as serious violent felonies under the federal three-strikes law. Accordingly, I would reverse the judgment of the district court, vacate Lightfoot's life sentence, and remand for resentencing.